JOINER, APPELLEE, *v.* THE ILLUMINATING COMPANY, APPELLANT.

[Cite as Joiner v. Illuminating Co. (1978), 55 Ohio App. 2d 187.]

(No. 36511—Decided February 2, 1978.)

*Mr. Jack T. Joiner,* for appellee.
*Mr. Robin G. Weaver,* for appellant.

KRENZLER, J. On May 30, 1975, the plaintiff-appellee, hereinafter referred to as the appellee, filed a statement of claim in the Small Claims Division of the Lakewood

Municipal Court, Lakewood, Ohio, against the defendant-appellant, The Cleveland Electric Illuminating Company, hereinafter referred to as the appellant. The appellee's claim alleges that on May 21, 1975, a utility pole transformer in front of appellee's home exploded throwing parts of the device upon his nearby automobile which was damaged to the extent of $126.72.

The appellee's claim was heard before a court-appointed referee who subsequently filed the following findings of fact and conclusions of law:

"Report of Referee

"To the Honorable Harold J. Craig, Judge of Said Court:

"The undersigned, Chester B. Gynn, pursuant to the order of this court appointing him referee herein, to report findings of fact and conclusions of law, respectively reports as follows:

"Findings of fact

"1. On Wednesday, May 21, 1975, there was an electrical thunderstorm in the area, and lightning struck a utility pole of CEI in the vicinity of 1583 Elmwood Avenue, Lakewood, Ohio, causing electric service to 1583 Elmwood to be disrupted.

"2. At this time, plaintiff telephoned the defendant two or three times, but received no answer.

"3. After two or three hours electric power was restored by the defendant, and the defendant's transformer on the aforesaid utility pole started 'popping.'

"4. Plaintiff called the defendant, the defendant's telephone operator referred the call to its service department which did not answer.

"5. Subsequently, the transformer of the defendant caught on fire, the plaintiff again called the defendant, again was referred to its service department, and again the defendant's service department failed to answer.

"6. While the plaintiff was still waiting for the defendant to answer, there was an explosion of the transformer or parts thereof and some parts thereof went through the air and fell on the plaintiff's automobile.

"7. Plaintiff's automobile was damaged on the rear trunk deck by numerous dents and scrapes damaging the same in the amount of $126.72. The defendant replaced the damaged transformer with an operational transformer.

"8. Defendant's expert testified that the transformer was hit by lightning, that the fire and explosion was caused after power was restored because the 'P. C.' or fuse was inoperative as a result of the lightning strike, allowing the power to reenter the now defective transformer.

"Conclusions of Law

"1. Since electricity is a dangerous and deadly instrumentality, it is the duty of the defendant to exercise a very high degree of care in its handling and use.

"2. The failure of the defendant's service department to answer two telephone calls, reporting the fire and sputtering, referred to it by the defendant's operators constitutes a lack of degree of care commensurate with the danger.

"3. The continuing malfunction of the transformer caused by the failure of the defendant to correct the malfunction after power was restored was the proximate cause of paintiff's damage, which was in the amount of $126.72.

"4. Judgment should be for the plaintiff against the defendant in the amount of $126.72 and costs."

On April 19, 1976, the Lakewood Municipal Court approved the referee's report and subsequently adopted his findings of fact and conclusions of law as its own. Judgment was rendered for the appellee, as recommended by the referee.

The appellant filed a timely notice of appeal and has set forth three assignments of error for our consideration:

"I. The trial court erred in granting judgment for plaintiff for the reason that plaintiff failed to offer any certificate of title for the alleged damaged automobile.

"II. The trial court erred in refusing to approve the statement of evidence and proceedings prepared by defendant-appellant pursuant to Appellate Rule 9(C) where no objection thereto was made by plaintiff-appellee.

"III. The trial court erred in granting judgment to plaintiff wherein the evidence clearly established that the proximate cause of the explosion of the transformer was the bolt of lightning, which cause would have produced the property damage complained of independently of any alleged negligence on the part of defendant."

After filing the appeal, the appellant prepared a statement of the evidence or proceedings, which is permitted by Appellate Rule 9(C), and served the proposed statement upon the appellee. The appellee entered no objection or other response to the statement. The appellant's statement was submittted to the trial court as follows:

"Now comes The Cleveland Electric Illuminating Company, defendant-appellant, herein, and respectfully submits the following proposed Statement of Evidence or Proceedings pursuant to Rule 9(C) of the Ohio Rules of Appellate Procedure:

"1. This statement of Evidence or Proceedings hereby adopts by reference each and every finding of fact set forth in the report of Referee, Chester B. Gynn, filed with and approved by this court on or about March 16, 1976.

"2. As a result of the electrical thunderstorm described in paragraph one of the Referee's 'Finding of Fact,' many electrical problems were created and as a direct and proximate result thereof, the CEI switchboard was flooded with service requests.

"3. CEI witness, John Vargo, testified that there is a priority in repairing electrical problems. First, downed wires are cleared because they present a danger to the public. The reason for establishing a priority in trouble reports is because it is physically impossible for CEI to respond to and repair all trouble calls at the same time.

"4. CEI made every effort to repair the trouble and the employees of CEI were in fact working overtime to meet the demands placed upon them by these trouble calls.

"5. Plaintiff-appellee introduced no evidence that had CEI been able to respond more quickly, the transformer would not have been exploded."

On August 2, 1976, the trial court put on the following entry:

"This Court having fully considered the Statement of Evidence or Proceedings filed herein by plaintiff-appellee [plaintiff-appellant], finds that said statement is inaccurate in part in that no evidence was introduced with respect to certain statements contained therein.

"The Court hereby orders that the following Statement of Evidence or Proceedings be, and it hereby is, settled and approved; It is further ordered that the clerk of this court include the said Statement of Evidence or Proceedings in the record on appeal as provided under Rule 9(C) of the Ohio Rules of Appellate Procedure.

"1. This Statement of Evidence or Proceedings hereby adopts by reference each and every finding of fact set forth in the report of Referee, Chester B. Gynn, filed with and approved by this court on or about March 16, 1976.

"2. As a result of the electrical thunderstorm described in paragraph one of the Referee's 'Finding of Fact' many electrical problems were created.

"3. CEI witness, John Vargo, testified that there is a priority in repairing electrical problems. First, downed wires are cleared because they present a danger to the public."

Consequently, the record before us on this appeal consists of the original papers, the certified docket and journal entries of the trial and the above statement of evidence or proceedings as approved by the trial judge.

We will first consider the appellant's second assignment of error which challenges the trial court's deletion of certain material from the appellant's proposed statement of evidence or proceedings. The appellant contends that since the appellee made no objections or other response to the appellant's proposed statement of the evidence the trial court should have approved the statement as submitted to it.

The question to be answered in this case is whether a trial court may make additions, deletions, or other modifications in a proposed narrative transcript of proceedings under Appellate Rule 9(C) before approving it when there have been no objections by the appellee or when both par-

ties are in agreement. The specific question raised by the appellant is part of the more general issue concerning the trial court's role in settling and approving a proposed narrative transcript of proceedings under Appellate Rule 9(C), or an agreed statement prepared by the parties as the record on appeal under Appellate Rule 9(D).

Appellate Rule 9 clearly gives the trial court the responsibility and authority to make sure that a narrative transcript of proceedings under Appellate Rule 9(C) or an agreed statement under Appellate Rule 9(D) is accurate and conforms to the truth before it is approved. The authority for this conclusion is found in Appellate Rule 9, Sections (B), (C), (D), and (E), all of which are to be read in *pari materia* and will be discussed below.

The preparation and transmittal of the record on appeal pursuant to Appellate Rule 9 sometimes becomes a troublesome process. This is especially so if a court reporter is not appointed by the court to record the proceedings, making it impossible to have a verbatim transcript of proceedings, either complete or partial. The principal problem occurs in the preparation, settling, and approving of a statement of the evidence or proceedings when no report was made or when a transcript of proceedings is unavailable.

The record on appeal consists of the original papers and exhibits filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries. App. R. 9(A). The appellant who wants a transcript of proceedings included in the record on appeal must either comply with the provisions of Appellate Rule 9(B) to obtain a complete or partial verbatim transcript or satisfy the requirements of Appellate Rule 9(C) to secure a narrative statement of the evidence or proceedings.

The appellant has the duty to order a verbatim transcript of proceedings, either complete or partial, when a reporter is appointed by the court to record the proceedings whether by stenographic, phonogramic, or photographic means, or by the use of audio electronic recording devices or by the use of video recording systems. App. R. 9

(B). Proceedings recorded by means other than video tape must be transcribed into a written form by the re-. porter and when certified by the reporter in accordance with Appellate Rule 9(B) shall constitute the transcript of proceedings. App. R. 9(A). After the verbatim trans-- cript of proceedings has been prepared, the reporter shall certify it as correct and state whether it is a complete or partial transcript. App. R. 9(B).

The procedure for a narrative transcript follows a different course. In cases where no report of the evidence or proceedings at a hearing or trial was made or if a transcript of proceedings is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means including his recollection. This statement shall be served on the appellee who may serve objections or proposed amendments within 10 days after service. App. R. 9(C). Then, the statement and any objections or proposed amendments shall be forthwith submitted to the trial court "for settlement and appro- val." The trial court shall act thereon prior to the time for transmission of the record pursuant to Appellate Rule 10 and "as settled and approved" the statement shall be included by the clerk of the trial court in the record on appeal. App. R. 9(C). This rule expressly pro- vides that in the event the appellee has any objections or proposed amendments to the appellant's statement, the trial court shall settle the differences between the parties and approve the statement. On the other hand, if the ap- pellee does not have any objections or amendments to the appellant's statement, then there being no disagreement between the parties requiring "settlement," the statement is submitted to the trial court for approval.

The narrative statement of evidence or proceedings provided for in Appellate Rule 9(C) is an alternative to the verbatim transcript of proceedings provided for in Appellate Rule 9(B). This statement is combined with the original papers and exhibits and the certified copy of the docket and journal entries of the trial court proceed- ings to create the record on appeal.

Appellate Rule 9(D) provides an option available

to the parties in the preparation of the record on appeal and that is an agreed statement as the record on appeal. This agreed statement when properly filed and submitted to the trial court constitutes the record on appeal in lieu of the record defined in Appellate Rule 9(A). If Appellate Rule 9(D) is to be used, the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented.

If this statement conforms to the truth, it, together with such additions as the trial court may consider necessary fully to present the issues raised by the appeal, shall be approved by the trial court prior to the time for transmission of the record pursuant to Appellate Rule 10 and then shall be certified to the Court of Appeals as the record on appeal. App. R. 9(D).

Thus, if the parties submit an agreed statement as the record on appeal and it conforms to the truth, it shall be approved by the trial court. The trial court has the authority, however, to make additions to the agreed statement as it may consider necessary fully to present the issues raised by the appeal before approving the statement. App. R. 9(D).

Although the trial court may make additions, Appellate Rule 9(D) does not expressly grant the trial court the authority to make deletions and other changes to the agreed statement. But, under the rule, the court need approve the statement only "if it conforms to the truth." Therefore, implicit in Appellate Rule 9 (D) is the trial court's authority and discretion to either amend the agreed statement when the court determines it does not conform to the truth or return the agreed statement to the parties advising them that it does not conform to the truth, stating the court's basis for this decision, and instructing the parties to resubmit the statement so that it will conform to the truth. A mere statement by the trial judge to the parties that it does not conform to the truth with no fur-

ther action on his part would result in an impasse; and, consequently, there would be *no* record on appeal. The trial court may not merely refuse to approve the statement. The trial court must state the reasons for its decision and in what respects the agreed statement does not conform to the truth. App. R. 9(D).

Finally, Appellate Rule 9(E) provides that the record on appeal may be corrected or modified in certain circumstances. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation or the trial court, either before or after the record is transmitted to the Court of Appeals, on proper suggestion or its own initiative may direct that any omission or misstatement be corrected and, if necessary, direct that a supplemental record be certified and transmitted. App. R. 9(E).

In order to understand the trial court's authority under Appellate Rule 9 and to resolve the issues raised in this appeal, it is necessary to understand the meaning of the words "settle," "approve," and "conform to the truth."

Appellate Rules 9(C), (D), and (E) clearly state that if there are any objections, proposed amendments, or disagreements as to the proper contents of a statement of evidence or proceedings, of an agreed statement, or of the record as usually constituted under App. R. 9(A), these differences shall be submitted to and settled by the court. Naturally, settlement by the court would be required only when there are such objections, proposed amendments, or disagreements.

The terms "approval" and "conforms to the truth" as employed by Appellate Rules 9(C), (D), and (E), mean that the trial court must first determine the accuracy and truthfulness of a proposed statement of the evidence or proceedings or an agreed statement and then approve it

and sign it. This gives the trial judge the responsibility, duty, and authority to delete, add, or otherwise modify portions of a proposed statement so that it will conform to the truth and be accurate before he approves it.

It is our conclusion that even if the appellee does not object or propose amendments to the appellant's statement—indeed even if the appellee agrees with the appellant's proposed statement—Appellate Rule 9(C) gives the trial court the authority to make this narrative transcript of the proceedings conform to the truth.

Naturally, in most instances, when both parties who have competing and vested interests in the outcome of a case agree as to the accuracy of a statement of evidence or proceedings, it is unlikely that the trial judge would make any additions, deletions, or modifications and in all probability would approve it as submitted to him. However, Appellate Rule 9 does grant the trial court the responsibility and authority to make any such deletions, additions, or modifications to a proposed narrative statement of evidence or proceedings.

For the reasons given, we conclude that the Lakewood Municipal Court properly acted pursuant to its authority under Appellate Rule 9 when it deleted certain material from the appellant's proposed statement of evidence or proceedings. The second assignment of error is not well taken.

Returning to the first assignment of error, the appellant contends that the appellee failed to offer in evidence a certificate of title to prove his ownership of the damaged automobile. The assignment of error is not well taken.

R. C. 4505.04 provides, in relevant part:

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

The statute makes clear that production of a certificate of title is not the exclusive method to prove ownership of an automobile in Ohio.

We do not have a verbatim transcript of proceedings before us; and, therefore, we do not know how the evidence of appellee's car ownership was introduced. The record here contains a narrative statement of the evidence or proceedings which in paragraph one adopts the referee's findings of fact. Paragraph seven of the referee's report states, in part:

"7. Plaintiff's automobile was damaged on the rear trunk deck by numerous dents and scrapes damaging the same in the amount of $126.72.

This reference means that the referee decided the ownership issue even though the record does not disclose the method used under R. C. 4505.04 to establish ownership. In the absence of a record which affirmatively discloses the alleged failure of proof, this court has no alternative but to indulge the presumption of the regularity of the proceedings in the trial court. *Ostrander* v. *Parker-Fallis* (1972), 29 Ohio St. 2d 72.

In its third assignment of error the appellant argues that the sole cause of appellee's injury was an act of God —the bolt of lightning—which would have produced appellee's property damage independently of any alleged negligence of the appellant.

The record does not support the appellant's contention. The court below in its conclusions of law found that the appellant was negligent in failing to answer appellee's telephone calls and in failing to repair the transformer before restoring power to it. The court further found that the appellant's negligent acts and omissions to act were the proximate cause of the appellee's damage.

We are limited in this appeal to the facts set forth in the narrative statement of the evidence. The referee's findings incorporated therein are sufficient to support the trial court's legal conclusions as to the appellant's negli-

gence and the proximate cause of the damage suffered by the appellee.

The trial court held the appellant liable not for damage caused by the bolt of lightning but for the appellant's negligent acts and omissions occurring subsequent to the act of God. The third assignment of error is not well taken.

The judgment is affirmed.

*Judgment affirmed.*

PARRINO, P. J., and PRYATEL, J., concur.

PRYATEL, J., concurring. I concur in the decision to affirm.

However, I cannot see evidence of negligence in the failure of appellant's "service department" to answer two telephone calls without knowing how long the telephone went unanswered and how much time elapsed between the two calls.

In his amendments to the statement of evidence the judge added that "as a result of the electrical thunderstorm * * *, many electrical problems were created." Under these conditions one can hardly expect an instantaneous response to a telephone call.

Furthermore, finding of fact No. 6 recites that while the appellee was waiting for the appellant to answer the telephone "there was an explosion of the transformer or parts thereof * * *." Obviously, even if the appellant had responded immediately, the question arises whether or not appellant could have prevented the accident.

My specification of negligence would rest on appellant's failure to check out the equipment before energizing the transformer.