OPINION
{¶ 1} Appellant, Steven C. Beltowski, appeals from the judgment entry entered by the Lake County Common Pleas Court. On review, we affirm the judgment entry of the trial court.
 {¶ 2} Beltowski was indicted by the grand jury for one count of engaging in a pattern of corrupt activity, in violation of R.C.2923.32(A)(1), a felony of the second degree; 18 counts of breaking and entering, in violation of R.C. 2911.13(A), felonies of the fifth degree; and one count of attempted breaking and entering, in violation of R.C. *Page 2 2911.13 and 2923.02, a misdemeanor of the first degree. Beltowski entered a plea of not guilty to all charges. Prior to trial, the state of Ohio moved to dismiss two of the breaking and entering counts, and the trial court dismissed those two counts.
 {¶ 3} The case proceeded to a jury trial. The jury returned verdicts of guilty on all counts.
 {¶ 4} At sentencing, Beltowski received a sentence of six years for the engaging in a pattern of corrupt activity conviction and sentences of six months each for the 16 breaking and entering convictions, all sentences to be served consecutively to each other. The misdemeanor conviction was merged for purposes of sentencing. Therefore, the aggregate sentence was 14 years. In addition, Beltowski's sentence was ordered to be served consecutively to a sentence imposed in case No. 05 CR 000406, but concurrent to a sentence imposed in case No. 05 CR 000574.
 {¶ 5} Beltowski filed a timely appeal to this court, raising the following two assignments of error:
 {¶ 6} "[1.] The trial court erred by allowing the trial to be conducted without adequately preserving the record of the trial and proceedings on the record as required by Rule 22 of the Ohio Rules of Criminal Procedure thereby denying appellant his due process rights to appellate review.
 {¶ 7} "[2.] The appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I of the Ohio Constitution."
 {¶ 8} In his first assignment of error, Beltowski argues that the recording device employed by the trial court to record testimony at trial was faulty and resulted in a trial *Page 3 
transcript that had 437 gaps in testimony. The gaps occurred during voir dire, trial testimony, and sidebar conferences. As a result of these gaps, Beltowski argues, it is not possible for appellate counsel to adequately review the proceedings at trial. Therefore, he contends that he was denied due process and that a new trial should be ordered.
 {¶ 9} Following oral argument, this court remanded this matter to the trial court to clear up the gaps in testimony in the transcript. Originally, the transcript had been filed pursuant to App.R. 9(B). Pursuant to App.R. 9(E), this court, sua sponte, ordered that an App.R. 9(C) statement be prepared owing to the numerous gaps and omissions in the testimony. The App.R. 9(C) statement was to "be a comprehensive statement of the evidence or proceedings from the best available means, included the transcript as filed and appellant's recollection."
 {¶ 10} Upon remand, the trial court caused an amended transcript to be prepared for resubmission to this court. In a judgment entry dated May 25, 2007, the trial court stated that the "number of inaudibles or unintelligibles [had been reduced to] 29, 12 of which [occurred] during jury selection * * * [and] the number words missing from the remainder of the trial consists of an estimated 17 to 25 words * * * [t]he amended transcript is 99.993% complete and accurate."
 {¶ 11} We shall, therefore, proceed to a review of Beltowski's first assignment of error in light of the fact that substantially all of the inaudible or unintelligible testimony has been cleared up in the amended transcript.
 {¶ 12} Beltowski points to Crim.R. 22, which states, in part: "[i]n serious offense cases all proceedings shall be recorded. * * * Proceedings may be recorded in shorthand, *Page 4 
or stenotype, or by any other adequate mechanical, electronic or video recording device."
 {¶ 13} The state of Ohio, while not denying that gaps do exist in the transcript, asserts that Beltowski did not take the appropriate steps following the trial to rectify the gaps in the transcript and has made no showing of prejudice with respect to the gaps. Specifically, the state of Ohio argues that Beltowski was bound by the three requirements laid down in the case of State v. Palmer, a death penalty case, where the Supreme Court of Ohio stated:
 {¶ 14} "[T]his court has clearly held that reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue."[1]
 {¶ 15} We shall first address the duty of the appellant to exemplify errors in the record.
 {¶ 16} "[I]t is the duty of the appellant to ensure that the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court of review."[2] *Page 5 
 {¶ 17} "An appellant has the duty to exemplify any alleged errors by reference to matters in the record.[3] This duty may be discharged by the filing of a verbatim transcript pursuant to App.R. 9(B), a narrative statement of the evidence as provided in App.R. 9(C), or an agreed statement of the record filed pursuant to App.R. 9(D). Absent any exemplified error, a reviewing court has no choice but to presume regularity in the proceedings of the trial court and affirm.[4]"[5]
 {¶ 18} In addition, App.R. 9(E) makes provision for the correction or supplementation of the record where material omissions have occurred by "error or accident:"
 {¶ 19} "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals."
 {¶ 20} It should be noted that this court, sua sponte, ordered that the omissions in the transcript be corrected and remanded this matter to the trial court for that purpose. *Page 6 
 {¶ 21} Where an appellant chooses to file a transcript in order to exemplify errors in the record, he has a duty to file a transcript that is adequate for an appellate court to review:
 {¶ 22} "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."[6]
 {¶ 23} Further, an "adequate" transcript does not mean a "perfect" transcript. As stated by the Twelfth Appellate District:
 {¶ 24} "The Ohio Rules of Criminal Procedure provide that all proceedings shall be recorded in all `serious offense cases.'[7] However, the Ohio Supreme Court has held that even in capital cases, `[t]he requirement of a complete, full, and unabridged transcript in capital trials does not mean that the trial record must be perfect for purposes of appellate review.'[8]"[9]
 {¶ 25} Thus, the trial court has the duty under Crim.R. 22 to record the proceedings and the appellant has the duty to provide an adequate transcript for purposes of review. We agree with Beltowski that, as originally transcribed, the proceedings were not recorded in such a way as to enable to him to file an adequate transcript, and that he did not learn of the inadequacies until the transcript was prepared *Page 7 
for this appeal. However, now that an amended transcript has been filed in this court, we find that he was not prejudiced by any inadequacies in the transcript.
 {¶ 26} In doing so, we do not accept the argument of the state of Ohio that the holding of the Palmer case is applicable to this case.Palmer is distinguishable because it was a death penalty case where a transcript is always required,[10] and where counsel for appellant failed to ensure that all proceedings were recorded. In this case, the inaudible, unintelligible, and omitted portions of the record were no fault of trial counsel. Instead, they resulted from a recording system not sensitive enough to adequately pick up all trial testimony and sidebar conferences. We recognize that other appellate districts have extended the holding of Palmer to encompass all omissions in a transcript,[11] but we hesitate to do so because it would impose a nearly impossible burden on appellate counsel, especially where he has not acted as trial counsel.
 {¶ 27} App.R. 9 casts upon appellate counsel the duty to furnish an adequate transcript, but it must be tempered with a rule of reason such that the duty is not transformed into an impossible burden. At the point where the ability to recreate the trial proceedings becomes well nigh impossible, counsel should be relieved of his duty to furnish an adequate transcript. Where the trial court has produced a faulty recording and an adequate transcript cannot be obtained from the recording, appellate counsel should avail himself of the procedures spelled out in App.R. 9(E) and seek the intercession of the trial court to rectify the problem and, failing that, this court will, if *Page 8 
necessary, invoke the procedures under App.R. 9(E) to ensure the adequacy of the record.
 {¶ 28} Still, we are mindful that appellant must not only show that the transcript is not adequate, but that he was prejudiced by the faulty recordings. Even with the many omissions and inaudible and unintelligible portions in the original transcript, we have been able to review the amended transcript and determine that Beltowski was not prejudiced by the inadequate transcript, as discussed below.
 {¶ 29} We also note the possibility that other assignments of error advanced by an appellant can demonstrate prejudice resulting from gaps in testimony. An example is where an appellant assigned as error the fact that hearsay testimony was admitted, but the actual testimony is inaudible or unintelligible. However, that is not the case here. Beltowski's only other assignment of error is reviewable without consideration for the gaps in testimony.
 {¶ 30} "Unfortunately, recording equipment occasionally malfunctions. The failure of recording equipment in the trial court does not result in prejudice per se."[12] *Page 9 
 {¶ 31} Beltowski points to a gap in the testimony of Detective Prochazka. This gap exists in both the original and the amended transcript. This detective testified, among other things, about shoe impressions made by Nike running shoes outside one of the businesses that was broken into. Beltowski points to the gap in the direct testimony of the detective when he was asked whether the shoe impressions in state's exhibits 3C and 3D compare to the impressions obtained outside the business. The transcript does not record the detective's answer, but counsel for appellant had an opportunity to cross-examine and recross-examine the detective and was able to establish that Beltowski's shoe could not be positively identified as a match to the shoe impression. Thus, Beltowski was not prejudiced in this colloquy.
 {¶ 32} Other instances of gaps in the testimony occurred in the voir dire of the jury. Again, whatever answers the jurors gave in voir dire, there is nothing in the original or the amended transcript to indicate that counsel for Beltowski had any objection to the answers given by the prospective jurors. As stated by the trial court in its order of May 25, 2007, "no objections were made to any juror excused or seated and no objection [was made] to the jury selection process." Thus, no prejudice can be inferred from the gaps in the voir dire examination.
 {¶ 33} Finally, Beltowski points to a colloquy between the prosecutor and the trial court regarding the functioning of the prosecutor's microphone. The trial court had at least ten microphones placed in the courtroom. The microphone in question was just one of them. The colloquy reflects that the prosecutor's voice could still be picked up by the nine other microphones. The fact that one of ten microphones in the courtroom may not have been functioning is not prejudicial to Beltowski. *Page 10 
 {¶ 34} A review of the entire transcript reveals that 39 witnesses testified for the state. There are eight volumes of transcript, most of which was transcribed without any gaps in the testimony. While the original transcript was not adequate for our review purposes, the amended transcript demonstrates that Beltowski was not prejudiced by the inadequate transcript. We conclude that the first assignment of error is without merit.
 {¶ 35} We further conclude that Beltowski was not prejudiced by the filing of an amended transcript pursuant to App.R. 9(B) instead of a statement of the evidence pursuant to App.R. 9(C). Following remand, Beltowski and his counsel were given ample opportunity to review the original transcript as filed in this court and to make corrections and/or objections to the amended transcript. Beltowski objected to the amended transcript, but did so beyond the time allowed by the trial court to make objections. Thereafter, the trial court conducted a hearing to determine discrepancies, if any, between the audio recording and the amended transcript. The trial court found the amended transcript to be in compliance with this court's order of remand. Beltowski has posed no objection to the amended transcript in this court. Any objection, therefore, is waived. We conclude that Beltowski has not been prejudiced by the filing of the amended transcript.
 {¶ 36} The first assignment of error is without merit.
 {¶ 37} In his second assignment of error, Beltowski argues that he was denied effective assistance of counsel because his trial counsel made a trial strategy decision that virtually guaranteed that he would be convicted. Specifically, counsel withdrew his *Page 11 
motions in limine to keep out expert reports concerning shoe impressions that the state of Ohio wished to introduce into evidence.
 {¶ 38} David Green is a trace evidence expert employed by the Lake County Regional Forensics Laboratory. He prepared reports concerning shoe impressions of footprints found at a number of the businesses that had been broken into. These reports also contained his conclusions regarding glass fragments from the scene of the crimes and glass found in Beltowski's jacket. Except with respect to one report received after trial had already commenced, the reports did not positively conclude that the shoe impressions were made by Beltowski's shoes, nor did they positively conclude that the glass found in Beltowski's jacket came from the crime scenes. The one report that did make a positive identification of a shoe impression was kept out of evidence due to its having been received at the last minute.
 {¶ 39} Counsel for Beltowski had filed motions in limine to exclude the testimony of David Green due to the lateness of receiving his reports. In a sidebar conference, the trial court questioned the wisdom of keeping out those reports, given that they did not positively conclude the shoe impressions were made by Beltowski. Shoes obtained in a search warrant, shoe impressions from surveillance videos, and plaster casts were already in evidence, whether or not Green's testimony would come in. The trial court considered the likelihood of the jury putting those pieces of evidence together and concluding that the shoe impressions were made by the shoes that belonged to Beltowski. If Green's testimony were admitted, counsel would be able to inject an element of doubt as to whether there was a match between Beltowski's shoes and the shoe impressions. Further, if Green's testimony was excluded the trial court was not *Page 12 
going to permit counsel to argue in closing argument that the state failed to adduce expert testimony to show that the impressions were made by Beltowski. Counsel, therefore, had a choice: either keep out Green's testimony and allow the jury to hold up Beltowski's shoes to the shoe impressions, and draw their own conclusions about whether they were identical; or, allow Green to testify that a less-than-positive identification of the shoe impressions could be made. If the latter course were taken, then counsel could argue that even the state's own expert could not positively state that the shoe impressions were made by Beltowski. If the former course were taken, Green would not testify, but then the jurors could simply hold up the shoes to the impressions and draw their own conclusions about the two being identical. In essence, the trial court was advising Beltowski's counsel that a better argument could be made about the lack of conclusiveness if Green testified than if he did not. Counsel for Beltowski was persuaded by the court's reasoning and withdrew his motions in limine.
 {¶ 40} Beltowski now claims that his trial counsel should not have let Green testify, that he should have requested a continuance to hire his own expert to analyze the shoe impressions, and that by letting Green testify counsel was guaranteeing Beltowski's convictions.
 {¶ 41} The two-part standard for judging whether counsel's representation was ineffective was articulated in State v. Bradley:
 {¶ 42} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's *Page 13 
performance. (State v. Lytle (1976), 48 Ohio St.2d 391, 2 O.O.3d 495,358 N.E.2d 623; Strickland v. Washington (1984), 466 U.S. 668, followed.)"[13]
 {¶ 43} As stated by the United States Supreme Court in the case ofStrickland v. Washington:
 {¶ 44} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"[14]
 {¶ 45} Therefore, in order to warrant a reversal, Beltowski must show that what his counsel did was unreasonable and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial could have been different."[15] "`A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[16]
 {¶ 46} Beltowski's principal trial strategy was to show that investigators were unable to recover any hair, fiber, fingerprint, or DNA evidence from any of the crime scenes. However, in addition to the reports from the forensic laboratory, the state of Ohio also had the testimony of Beltowski's co-defendant that linked him to many of the *Page 14 
break-ins, it had evidence from his mother's house of shoes and a jacket that were pictured in surveillance videos, it had plaster cast impressions of shoeprints that could be matched to Beltowski's shoes, and it had evidence of glass fragments from his clothing that could be tied to one of the break-ins. Thus, the state of Ohio had more evidence than just Green's reports in order to gain convictions against Beltowski.
 {¶ 47} Beltowski's counsel's judgment call to withdraw the motions in limine must be considered in light of the other evidence that could be used to convict him. It was not unreasonable for his counsel to have done so. By withdrawing the motions in limine, Beltowski's counsel was allowed to make an argument that he otherwise could not have made, namely that a positive identification by the state's expert of the shoe impressions was not possible.
 {¶ 48} Likewise, based on the evidence that was used to convict Beltowski apart from Green's report, we conclude that the outcome of guilty verdicts is highly probable and that the likelihood of acquittal was highly improbable. We are not convinced that there would have been a different outcome if Green's reports had been excluded.
 {¶ 49} Therefore, we do not find that there was ineffective assistance of counsel.
 {¶ 50} The second assignment of error is without merit.
 {¶ 51} The judgment entry of the trial court is affirmed.
COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur.
[1] (Citations omitted.) State v. Palmer (1997), 80 Ohio St.3d 543,554.
[2] State v. Boughner (Dec. 17, 1999), 11th Dist. No. 98-G-2161, 1999 Ohio App. LEXIS 6116, at *28, citing App.R. 10(A) and Rose Chevrolet,Inc. v. Adams (1988), 36 Ohio St.3d 17, 19.
[3] Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
[4] Id.
[5] Djurich v. LaHood (1990), 66 Ohio App.3d 332, 334.
[6] Knapp v. Edwards Laboratories, 61 Ohio St.2d at 199.
[7] Crim.R. 22.
[8] State v. Palmer, 80 Ohio St.3d 543, syllabus.
[9] State v. Parrish, 12th Dist. No. CA2000-10-199, 2002-Ohio-5447, at ¶ 47.
[10] App.R. 9(A).
[11] See, e.g., State v. Schilling (Feb. 12, 2002), 5th Dist. No. 2001 AP 01 0001, 2002 Ohio App. LEXIS 694, at *7-10; State v. Grove, 5th Dist. No. 01 CA 41, 2002-Ohio-3677, at ¶ 15-17; State v. Kuhn, 7th Dist. No. 02 BA 7, 2003-Ohio-4007, at ¶ 48-49(DeGenaro, J., dissenting);State v. Bell (Apr. 30, 2001), 12th Dist. No. CA99-07-122, 2001 Ohio App. LEXIS 1915; State v. Parrish, 12th Dist. No. CA2000-10-199,2002-Ohio-5447, at ¶ 45-51.
[12] (Citation omitted.) State v. Ward, 4th Dist. No. 03CA2,2003-Ohio-5650, at ¶ 28.
[13] State v. Bradley (1984), 42 Ohio St.3d 136, paragraph two of the syllabus.
[14] (Internal citation omitted.) Strickland v. Washington,466 U.S. at 689.
[15] State v. Bradley, supra, paragraph three of the syllabus.
[16] Id. at 142, quoting Strickland v. Washington, supra, at 694. *Page 1