The CITY OF AURORA, Appellee,

v.

BELINGER, Appellant.

[Cite as *Aurora v. Belinger,* 180 Ohio App.3d 178, 2008-Ohio-6772.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

Nos. 2007–P–0041 and 2007–P–0042.

Decided Dec. 19, 2008.

Christley, Herington & Pierce and Chad E. Murdock, for appellee.

James A. Zaffiro, for appellant.

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, Robert J. Belinger, appeals his conviction in the Portage County Municipal Court, Kent Division, for operating a vehicle with a prohibited concentration of alcohol in his blood, following the entry of his no contest plea. The issue presented on appeal was whether the trial court erred in denying appellant's motion to suppress. This court recognizes that the laws of this state and its municipalities prohibiting the operation of vehicles while drinking alcohol have been enacted for the protection of the public. We also recognize that we have the duty to review the record and to affirm a conviction if we find a sound basis to support it. However, the trial court's failure to provide a complete record on appeal, in violation of the express orders of this court, has resulted in the violation of appellant's constitutional right to appeal his conviction. Moreover, the trial court has demonstrated a pattern of failing to provide a complete record on appeal in other cases that have come before this court. As a result, we have no alternative but to reverse appellant's conviction. For the reasons that follow, we reverse and remand.

{¶ 2} On February 12, 2007, appellant was charged with one count of operating a vehicle under the influence of alcohol ("OVI"), in violation of Aurora Codified Ordinances 333.01A1; one count of operating a vehicle with a prohibited concentration of alcohol in his blood ("BAC"), in violation of Aurora Codified Ordinances 333.01A8; and one count of failure to control, in violation of Aurora Codified Ordinances 331.34. Appellant filed a motion to suppress and an appeal of his 90–day administrative license suspension. The trial court held a combined hearing on both matters.

{¶ 3} Based on the partial transcript of the hearing filed on appeal, Robert Dunn testified that on February 9, 2007, he was at Arabica Coffee Shop with

appellant, who is his friend, for about 15 minutes. Dunn left Arabica between 5:30 p.m. and 5:45 p.m.

{¶ 4} Dunn then ran some errands, and while on his way home to Streetsboro, he decided to stop at appellant's house in Aurora to check on him because appellant had said he was not feeling well. While driving on Cochran Road in Aurora, Dunn saw a white van that had gone off the road. He was concerned because the van looked like appellant's vehicle. He parked his car and walked over to the van. He saw appellant in the driver's seat, and he appeared to be sleeping. The key was in the ignition. The vehicle had sustained front-end damage.

{¶ 5} Dunn pounded on the driver's door window, and appellant woke up. Dunn opened the door and pulled appellant out of his van. He put appellant in his car and, after speaking briefly to a female motorist who had stopped, dropped him off at his house and went home.

{¶ 6} Patricia Pennington testified that on that date at about 7:30 p.m., she was driving on Cochran Road when she came upon a white van that had smashed into a tree. She saw another car parked behind the van. She pulled over to see whether anyone needed help. She saw two men getting into the car that was parked behind the van. She asked them whether there was anyone in the van, and Dunn said, "Not anymore." She also asked whether they had called the police, and Dunn said, "Not yet." Before she could ask them if they wanted her to call the police, they left in Dunn's car, leaving the van behind. At that point, another car stopped. The male driver of that car called the police on his cell phone and reported the wrecked vehicle.

{¶ 7} Stephen Sabulsky, patrol sergeant with the Aurora Police Department, testified that on February 9, 2007, at about 7:30 p.m., he was on duty when he received a message from the dispatcher about a motor-vehicle accident with possible injuries. Another officer had told the dispatcher that appellant was the registered owner of the crashed vehicle. That officer instructed the dispatcher to call appellant. In her message to Sabulsky, the dispatcher said that she had called appellant and that he had sounded "intoxicated." She said that at first, he mentioned something about the accident. He then said he had been at Arabica and that when he came out, his car was gone.

{¶ 8} Within a few minutes of receiving this message, Sergeant Sabulsky went to the crash scene. He conferred with other officers already there. He saw that the door of the van was open, and the front windshield was splintered. He then drove to appellant's residence to investigate. On his arrival, he saw appellant standing in his driveway.

{¶ 9} The sergeant noticed some cuts on appellant's forehead. He asked appellant who the driver of the crashed vehicle was, and appellant said, "I was a passenger." The sergeant again asked him who the driver was, and appellant said, "I'm the driver. I was driving." The sergeant was trying to determine who had been injured in the crash, so he asked appellant who the passenger was. Appellant said, "I was a passenger." Then he said he was driving the vehicle, but that he was wearing a seat belt. The sergeant asked him again who the passenger was, and appellant said that he was. He said that he was the only one in the vehicle and that his friend had picked him up.

{¶ 10} Sergeant Sabulsky asked appellant whether he had consumed any alcohol that evening. Appellant said that he had had a few drinks at Arabica. The sergeant asked him whether he had had any drinks after the accident, and appellant said, "No." Appellant said that he was driving home when his car went off the road, but he could not explain how his car got off the road.

{¶ 11} Sergeant Sabulsky testified appellant had glossy eyes and slurred speech. He had a strong odor of alcohol on his breath. He had trouble keeping his balance and was swaying. The sergeant said these are signs of alcohol consumption and impairment. He called paramedics to determine whether appellant had any injuries that needed treatment.

{¶ 12} The sergeant asked to talk to the friend who appellant said had driven him home. They went into appellant's kitchen, and appellant's daughter looked up Dunn's phone number. Sergeant Sabulsky called Dunn and questioned him, and then the paramedics arrived. The sergeant heard appellant tell the paramedics that he had a few drinks earlier that evening. The paramedics "cleared" appellant, meaning he had no injuries that needed medical attention, so they left and did not transport appellant to the hospital.

{¶ 13} Sergeant Sabulsky then administered field sobriety tests: the horizontal-gaze-nystagmus ("HGN") test, the walk-and-turn test, and the one-leg-stand test. The sergeant has successfully completed training in the administration of such tests and is certified by the state to administer them. The HGN test is not at issue, as the trial court suppressed the results of that test.

{¶ 14} Sergeant Sabulsky next administered the walk-and-turn test to appellant. He instructed appellant concerning how to perform this test and he also demonstrated the test. Appellant started to perform the test, but the sergeant stopped him for his safety because, while appellant was making the turn, he could not keep his balance, and the sergeant thought he was going to fall.

{¶ 15} Next, the sergeant administered the one-leg-stand test. He gave appellant instructions and demonstrated how he was to perform the test. Appellant lifted his foot, but contrary to the sergeant's instructions, on the count of

two, he put his foot down. He then lifted it up again and then put it down and kept it down. At that point, the sergeant arrested appellant for OVI. Appellant was then taken into custody and transported to the Aurora Police Department. Sergeant Sabulsky administered a breathalyzer test to appellant at 8:53 p.m. The sergeant has a senior operator permit from the Ohio Department of Health to operate the Blood Alcohol Content ("BAC") DataMaster. Appellant's test resulted in a reading of .178, which is more than twice the legal limit. Appellant also received an administrative license suspension for 90 days.

{¶ 16} On May 14, 2007, the trial court entered its judgment granting the motion to suppress the results of the HGN test, but found that the two other field sobriety tests were administered in substantial compliance with the National Highway Traffic Safety Administration manual. The court found that appellant was never read his *Miranda* rights and that any statements made after his arrest in response to police questioning were suppressed, but that all other statements were admissible. The court denied the motion as to all other evidence referred to in appellant's motion. The court also denied the appeal of appellant's administrative license suspension. Appellant then pleaded no contest to BAC and was found guilty. The trial court sentenced appellant to 180 days in jail with 174 days suspended and fined him $1,000 with $750 suspended. Appellant timely appeals the trial court's judgment entries, asserting the following five assignments of error:

{¶ 17} "[1.] The trial court erred in finding without comment that the arresting officer had probable cause to arrest appellant for OVI.

{¶ 18} "[2.] The trial court erred in admitting the statements made by appellant prior to his arrest where the arresting officer failed to read appellant his Miranda warnings.

{¶ 19} "[3.] The trial court erred in admitting the breathalyzer test where appellant's request to consult with counsel prior to the test was denied, the prosecution was unable to establish a time line in accordance with O.R.C. Sec. 4511.19(D)(1), and the there [sic] was no foundation for admission of the tests.

{¶ 20} "[4.] The trial court erred in admitting the field sobriety tests and refusing to allow appellant's expert to testify as to the proper administration of the tests.

{¶ 21} "[5.] The trial court erred in not granting the administrative license suspension appeal and not removing the ALS suspension."

{¶ 22} Because our disposition of this matter is based on the trial court's failure to provide a complete record on appeal, an outline of the attempts of the parties and this court to cure this error is in order. At oral argument, appellant

argued that his client's due process rights have been impacted by the issues surrounding the record in this case.

{¶ 23} Appellant's notices of appeal were filed on May 16, 2007. The two appeals in this matter, case No. 2007–P–0041 and case No. 2007–P–0042, have been consolidated for all purposes. Pursuant to App.R. 10(A), the record on appeal, including the transcript, was due for filing by June 25, 2007. On that date, this court granted a 30–day extension to file the record. On July 25, 2007, appellant filed his first motion for an extension on the ground that "an audio tape of the hearing has not been produced by the Lower Court." On August 9, 2007, this court granted the motion allowing an extension to September 10, 2007, for the court reporter to file the transcript of the hearing.

{¶ 24} On September 25, 2007, appellant filed a second motion for extension to file his brief because the trial court had not yet produced an audio recording of the hearing on disc. Appellant's counsel stated that on September 19, 2007, he wrote to the trial judge advising him that he still had not received the court's recording of the hearing. On September 27, 2007, appellant filed a supplement to his second motion for extension in which he stated that on September 25, 2007, the trial court produced two discs that were represented by the court to be a recording of the hearing. Appellant's counsel stated that, on playing the discs, he discovered both discs were blank. He said that on September 26, 2007, he wrote to the judge advising him that the recordings were blank and asking that the discs of the hearing be produced. On October 9, 2007, this court granted appellant's second motion for extension to file his brief to November 13, 2007. This court also granted the court reporter leave to October 29, 2007 to file the transcript of the hearing.

{¶ 25} On October 29, 2007, appellant filed a third motion for extension to file the transcript and his brief because the court reporter was "having some unexpected difficulties with the audio." This court granted appellant's motion extending his deadline to file his brief to December 13, 2007.

{¶ 26} Then, on December 11, 2007, appellant filed a fourth motion for extension of time to file his brief and the transcript and a "motion for order directing the trial court to produce the remainder of the audio recording." In support, appellant's counsel stated the trial court had produced a recording only of the first day of testimony. Counsel asked this court for an order directing the trial court to produce a recording of the second day of testimony. On December 21, 2007, this court granted appellant's motion. We also remanded the matter to the trial court for 40 days from December 21, 2007, ordering the trial court to determine whether the recording of the second day of the hearing still existed, and, if it did, to provide it to appellant's counsel or the court reporter. We stated that if the trial court determined that the recording no longer existed, the court

was to file a judgment entry to such effect. We stated that if an App.R. 9(C) statement was necessary, appellant was to prepare his proposed statement within ten days of the trial court's judgment. Under this judgment, appellee's ten days to object pursuant to App.R. 9(C) would begin to run on the date of service of appellant's proposed statement. The trial court was required to approve the App.R. 9(C) statement within ten days of the filing of appellee's objections. Further, appellant's brief was due for filing within 15 days from the refiling of the record.

{¶ 27} The record was refiled by the trial court clerk on January 31, 2008. Then, on February 15, 2008, appellant filed a fifth motion for an extension of time to file his brief, stating the transcript of the second day had only recently been filed on February 7, 2008 by the court reporter. The motion was granted, and appellant was given until March 7, 2008 to file his brief.

{¶ 28} Then, on April 10, 2008, appellee, the city of Aurora, filed a motion to modify the record, representing that the transcript from the second day of testimony did not include a substantial portion of the direct and cross examination of the city's principal witness, Sergeant Sabulsky. The city also filed its proposed modifications, which reflected the omissions in the transcript. On May 14, 2008, this court construed the motion as a motion to remand the case to the trial court to prepare an App.R. 9(C) statement of evidence. Due to the extensive delay caused by the trial court, this court by its judgment entry placed the parties and the trial court on an expedited schedule. We ordered the city to prepare and file its proposed statement in the trial court within ten days of the date of the entry. Appellant was given ten days from service of the city's proposed statement to file objections. Finally, the trial court was ordered to approve an App.R. 9(C) statement within ten days from the filing of appellant's objections. In addition, in our order on remand, we specifically stated: "[I]n the interest of justice, a determination of this case must be made by this court with the complete record."

{¶ 29} On May 21, 2008, the city filed its proposed statement of evidence in the trial court, and on May 29, 2008, appellant filed his proposed statement of evidence. However, the trial court failed to settle and approve an App.R. 9(C) statement of evidence, as required by this court's order. As a result, the complete record has never been filed in this court.

{¶ 30} An appellant has the duty to ensure that the record or whatever parts thereof are necessary for the determination of the appeal are filed with the appellate court. *State v. Boughner* (Dec. 17, 1999), 11th Dist. No. 98–G–2161, 1999 WL 1297606. An appellant has the duty to exemplify any alleged errors by reference to the record. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. When an appellant chooses to file a

transcript in order to exemplify errors in the record, he or she has a duty to file a transcript that is adequate for an appellate court to review. *State v. Beltowski,* 11th Dist. No. 2006–L–032, 2007-Ohio-3372, 2007 WL 1881497, at ¶ 21.

{¶ 31} The duty to provide a transcript for appellate review falls upon the appellant because he has the burden of showing error by reference to the record. *Knapp,* 61 Ohio St.2d at 199, 15 O.O.3d 218, 400 N.E.2d 384. If a transcript is unavailable, an appellant is obligated to provide a complete record pursuant to App.R. 9(C), (D), or (E).

{¶ 32} This court's orders of December 21, 2007, and May 14, 2008, mandated that the parties and the trial court follow the requirements of App.R. 9(C) other than its time provisions. That rule provides:

{¶ 33} "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App.R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal."

{¶ 34} The Eighth Appellate District explained the duty of the trial court to settle and approve the App.R. 9(C) statement of evidence in *Joiner v. Illum. Co.* (1978), 55 Ohio App.2d 187, 9 O.O.3d 340, 380 N.E.2d 361, as follows:

{¶ 35} "Settlement by the court is required * * * when there are objections, proposed amendments, or disagreements between the parties. Approval as contemplated by Appellate Rule 9(C) means that, whether or not settlement is required, the trial court must determine the accuracy and truthfulness of a proposed statement of evidence or proceedings and then approve it. Independent of any agreement or disagreement between the parties, the trial court has the responsibility, duty, and authority under Appellate Rule 9(C) to delete, add or otherwise modify portions of a proposed statement of the evidence or proceedings so that it conforms to the truth and is accurate before it is approved." Id. at syllabus.

{¶ 36} In *AA Sanitary Sewering Co. v. Zaboura* (Apr. 13, 1989), 8th Dist. No. 55221, 1989 WL 36700, the Eighth District explained the consequences of the trial court's failure to settle and approve an App.R. 9(C) statement of evidence:

{¶ 37} "On November 16, 1987, the trial court entered a general finding for the appellees. This judgment was rendered as a result of a bench trial held without benefit of the recording of testimony adduced at trial. On February 10, 1988, the appellant filed a narrative statement of proceedings pursuant to App.R. 9(C) with the appellees filing an objection to the proposed statement * * *. On March 17, 1988, the trial court disapproved the submitted narrative statement. The trial court, however, failed to settle or approve any statement as required by App.R. 9(C).

{¶ 38} " * * *

{¶ 39} "In the case *sub judice*, a review of the appellant's assignments of error requires a narrative statement of the proceedings which occurred before the trial court. Thus, the failure of the trial court to settle or approve a narrative statement prevents a review of the appellant's appeal." Id. at *1.

{¶ 40} In *Metro Cleveland Sec., Inc. v. United States Welding, Fabricating & Mfg., Inc.* (Nov. 25, 1992), 8th Dist. No. 61649, 1992 WL 357307, the plaintiff security contractor sued the defendant for fees incurred in providing security services. The court entered judgment in favor of the contractor. The parties submitted proposed findings of fact and conclusions of law, and the trial court approved the plaintiff's proposal. In addition, the defendant filed a statement of evidence under App.R. 9(C), and the plaintiff filed objections thereto along with its own statement. The trial court merely adopted the plaintiff's findings of fact and conclusions of law as its App.R. 9(C) statement. The appellate court held:

{¶ 41} "Pursuant to this rule, once a 9(C) statement is prepared and objections are raised by appellee, the trial court must settle and approve the statement.

{¶ 42} "In the present case, the record reveals that both Metro and U.S. Welding complied with App.R. 9(C). However, the trial court failed to 'settle and approve' the statement in accordance with App.R. 9.

{¶ 43} " * * *

{¶ 44} "We * * * found that an adopted App.R. 9(C) statement was nonconforming in *Seals v. Hal Artz Lincoln–Mercury, Inc.* (Mar. 7, 1991), Cuyahoga App. No. 57953, 1991 WL 30255, unreported, where we stated:

{¶ 45} " 'Since counsel are required and expected to comply with the rules, the trial judge can be held to no less a standard. The trial court has failed to "settle and approve" the statement in accordance with App.R. 9. * * * '

{¶ 46} "Here, the trial court's adoption of Metro's * * * findings of fact and conclusions of law does not meet App.R. 9(C) requirements and *denies appellant a fair review on appeal.* * * *

{¶ 47} "The trial court here chose to adopt findings of fact and conclusions of law rather than settle and approve U.S. Welding's 9(C) statement. A review of the findings of fact and conclusions of law adopted as the court's 9(C) statement reveal[s] ultimate determinations of fact without the underlying evidence in direct conflict with the purpose of App.R. 9. *This court is, therefore, prevented from determining the merits of U.S. Welding's appeal.* Accordingly, this case must be remanded to the trial court to 'settle and approve' a prepared statement of evidence and proceedings in accordance with App.R. 9. See *Seals.*" (Emphasis added.) *Metro Cleveland Security, Inc.,* *2.

{¶ 48} While we agree with the holding of the Eighth District in *Metro Cleveland Sec., Inc.* that the trial court's failure to settle and approve a statement of evidence that conformed with App.R. 9(C) "denies appellant a fair review on appeal," in light of the unique circumstances in this case, we do not agree that the outcome in that case is appropriate here. In *Metro Cleveland Sec., Inc.,* the trial court at least attempted to prepare a proper App.R. 9(C) statement of evidence. There was nothing that indicated a conscious decision on the part of the trial court to refuse to prepare such a statement. In the case sub judice, due to the trial court's failure to provide a recording of the entire hearing, both parties were required to file a total of six motions in efforts to obtain it. These efforts prompted this court to remand this case, not once, but twice, for purposes of obtaining either a recording of the hearing or an App.R. 9(C) statement. Despite the trial court's actual knowledge of the attempts made to obtain the transcript and our remand orders, we still do not have a complete transcript of the hearing or a statement of evidence. Further, this appeal has been pending on this court's docket for over one year due to the delays caused by the trial court's failure to provide the transcript or a statement of evidence. The trial judge apparently has no intention of complying with this court's orders, and, consequently, it would be futile to remand the case for a third time.

{¶ 49} In the instant case, because the trial court never settled and approved a statement of evidence, in spite of the exhaustive efforts of counsel for both parties and this court, we are unable to consider appellant's assignments of error, and appellant has been denied his right to an appeal. As a result, we reverse the trial court's judgment of conviction.

{¶ 50} This court makes its ruling with great reluctance, as we are fully aware of the consequences of our action today. However, in light of the flagrant violations, if not contempt, by the trial court of our orders, resulting in the violation of appellant's right to a fair review on appeal, we have no alternative.

{¶ 51} We emphasize that this court's holding today is limited to the highly unusual facts in this case, where the trial judge actually refused to comply with multiple remand orders of this court to settle and approve a statement of

evidence. This district is fortunate to have, almost without exception, trial courts that take great care in following this court's remand orders. Unfortunately, in this case, the trial court's refusal to do so interfered with appellant's right to an appeal and this court's administration of justice.

{¶ 52} In reaching our decision, we have also considered that this trial judge has a documented history of failing to provide a complete record on appeal. We recently held in another case that a record on appeal is essential for appellate review. In *State v. Ricard*, 11th Dist. Nos. 2007–P–0029, 2007–P–0030, and 2007–P–0031, 2008-Ohio-3742, 2008 WL 2875687, we observed:

{¶ 53} "As a preliminary matter, we note that after numerous attempts by Ricard to obtain a transcript, an App.R. 9(D) statement was filed. In that statement, the trial court stated that, '[d]ue to circumstances beyond the control of the parties, the transcript for the captioned case is not available for the sentencing hearing only.' This court takes notice that there have been numerous cases appealed from this municipal court where the lack of a record appears to be at issue. Since this appears to have become a pattern, it raises serious cause for concern. As stated in *State v. Cunningham* (Apr. 2, 1993), 4th Dist. No. 91 CA 30[, 1993 WL 97713], at *[4], '[a]n accurate transcript is the lynch pin of appellate review. * * * However, where a trial court maintains a system so that, regularly and consistently, the events at trial cannot be transcribed and a proper appeal record cannot be prepared, such failure reaches constitutional proportions. Appellate review is vitiated.' " *Ricard* at ¶ 6.

{¶ 54} Despite the concerns this court has previously raised, the trial judge has obviously done nothing to improve his system of recording the court's proceedings for appeal. To add insult to injury, in the case sub judice, he has failed to follow this court's orders that he settle and approve an App.R. 9(C) statement of evidence. The only logical conclusion that can be drawn is that the trial court feels it can ignore this court's orders. Trial courts are required to follow the mandates of reviewing courts on appeal. Moreover, trial courts are without jurisdiction to extend or vary the mandate given by the appellate court. If this was simply a lack of respect for the orders of this court, that would be one thing, but a lack of respect for the rights of parties and the rules by which we are all bound to follow cannot be permitted to continue. The public and the litigants have a right to expect impartial disposition of cases in accord with the constitution, laws, and rules of court. If we allow so much as the perception that this expectation is not being met, the entire system suffers.

{¶ 55} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Kent Division, is reversed, and the matter is remanded to the trial court for the

limited purpose of vacating appellant's conviction and entering judgment of acquittal.

Judgment reversed
and cause remanded.

RICE and O'TOOLE, JJ., concur.