[Cite as *State v. Diol*, 2019-Ohio-2197.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180249 |
| | | TRIAL NO. B-1700978 |
| Plaintiff-Appellee, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| MOHAMED DIOL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 5, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Sarah C. Larcade*, for Defendant-Appellant.

CROUSE, Judge.

## Introduction

{¶1}   In this case, an alleged non-United States citizen defendant, who pleaded guilty to felony drug trafficking and possession, was advised by defense counsel on the record at the plea hearing that deportation was "at worst" "possibly" discretionary when, in fact, it is presumptively mandatory (and the record reflects much confusion between lawyer and client on the citizenship question).

{¶2}   In two assignments of error, Mohamed Diol argues that the trial court erred by denying his "Emergency Motion to Vacate Guilty Plea Under *Padilla v. Kentucky* and *Lee v. United States,*" and that the trial court erred by failing to hold an evidentiary hearing on his motion to vacate despite his clear and unequivocal request.  We combine his assignments of error, and hold that the trial court did err, and that this cause must be remanded for the court to hold an evidentiary hearing.

## Facts and Procedural Background

{¶3}   Diol was indicted for one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2), a felony of the fifth degree, one count of possession of marijuana in violation of R.C. 2925.11(A), a misdemeanor of the fourth degree, and one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree.  The charges in this case arose from a search of Diol's vehicle conducted after a traffic stop.

{¶4}   Diol pleaded guilty to the marijuana-trafficking and the marijuana-possession counts of the indictment.  Pursuant to the plea agreement, the possession-of-criminal-tools charge was dismissed.

{¶5} During the Crim.R. 11 plea colloquy, the trial court asked Diol if he was a United States citizen. Diol replied that he was. The court asked Diol if his attorney explained everything to him and answered all of his questions. Diol replied, "No." At that point, Diol's attorney stated, "Judge, if I may, as far as the U.S. citizen part, I believe we need to elaborate on that a bit more on the record just to make sure I cover everything as required under Padilla versus Kentucky."

{¶6} The court responded that in an "overabundance of caution" it advised Diol if he was not a citizen of the United States, then

> conviction of the offense to which you're pleading guilty may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A broad range of crimes are deportable offenses under federal law. Deportation and other immigration consequences are the subject of a separate proceeding. No one, including defense counsel or this Court, can predict to a certainty the effect of this conviction on your immigration status.

{¶7} With this advisement, the court asked Diol, "Do you wish to go forward with your guilty plea, regardless of any immigration consequences, even if it means automatic removal from the United States and you're never able to return?"

{¶8} Before Diol could answer this question, his attorney stated,

> Just to be clear, I don't believe this would lead to automatic deportation. I believe at worst it possibly could make it discretionary. He tells me he's a U.S. citizen. He did show me his card, which tells me he was here for asylum purposes.

Diol's attorney then turned to Diol and asked, "Is that correct?" Diol replied, "Yes."

{¶9}   The court then addressed Diol for a second time,

So I'm not giving you legal advice. My question is, I've now advised you that if for some reason you're not a U.S. citizen – if you are a U.S. citizen I wouldn't think it's applicable.

If you're not, my question still remains that if you aren't a U.S. citizen everything I've advised you of applies; and my question to you, again, is do you wish to go forward with your guilty plea regardless of any immigration consequences even if it means automatic removal from the United States and you are never able to return?

{¶10}  After this question, the following exchange occurred:

Diol:            I mean, when I go overseas I have to have my passport. They give me a passport so I can go overseas.  I guess I'm a U.S. citizen.

The Court:    Guessing aside, I just want to make sure –

Diol:            I'm a U.S. citizen when I get out of the country --

The Court:    My question is, if for some reason you are not a U.S. citizen, you could suffer these consequences that I've just advised you of.  If you're a U.S. citizen it doesn't matter.  If you happen to not be a U.S. citizen, then all of this stuff that I just told you about applies; and my question is, I want to make sure that before you go forward with your guilty plea, you understand that if you're not a U.S. citizen you could be excluded from the U.S.  My question is do you wish to go forward with your guilty plea regardless of any immigration

consequence even it if means automatic removal from the United States and you're never able to return?

Diol:     Yes.

{¶11} The court continued with the Crim.R. 11 colloquy, accepted Diol's guilty pleas, and found Diol guilty of the marijuana trafficking and possession offenses.  Diol was sentenced to three years of community control on each count.

{¶12}  Approximately six months after he was sentenced, Diol, through new counsel, filed an "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky* and *Lee v. United States*," which requested an evidentiary hearing. In the motion, Diol argued that he should be permitted to withdraw his guilty pleas because his attorney rendered ineffective assistance of counsel when he erroneously advised him that his pleas to marijuana trafficking and possession would not result in mandatory deportation, but rather that deportation was discretionary.  Diol claimed that his pleas to drug trafficking and possession result in mandatory deportation under the law. He attached his affidavit as an exhibit to the motion. In his affidavit, Diol stated that he was a citizen of Mauritania, his attorney advised him that deportation would not be mandatory, and that had he been correctly advised, he would not have pleaded guilty.  Diol also attached the plea-hearing transcript as an exhibit to the motion.  The state did not file a response.

{¶13}  The trial court denied Diol's motion without explanation.  Three days later, Diol filed a "Motion for Findings of Fact and Conclusions of Law." Approximately one and a half months after Diol filed a timely notice of appeal, the trial court issued an "Entry Denying Motion to Vacate Guilty Plea and Findings of Fact and Conclusions of Law," and attached a copy of the plea-hearing transcript to

it.[1]  Citing the transcript, the trial court concluded, "Defendant's claim of ineffective assistance of counsel for counsel's alleged failure to advise him of his deportation risk fails because Defendant maintained he was a United States citizen."  The trial court further found that Diol did not establish grounds for relief because the court reviewed the potential immigration consequences with him repeatedly.

### The Plea-Hearing Transcript

{¶14} As an initial matter, the dissent believes we should overrule the assignments of error because Diol's plea-hearing transcript was not before the trial court when it ruled on Diol's motion.

{¶15}  However, while Diol did not file a certified copy of the plea-hearing transcript with the trial court at the time his motion was pending, he filed an uncertified copy of the transcript because it was attached as an exhibit to his motion. Subsequently, he filed a certified version of the transcript (which exactly matches the uncertified version), and we know the trial court reviewed and relied on the transcript because it cited to the transcript in its findings of fact and conclusions of law and attached a copy of the (certified) transcript to its findings of fact and conclusions of law. Neither the trial court, nor the state ever raised any concern about the accuracy of the uncertified transcript or any of this process. Accordingly, we find that it is appropriate for us to consider the plea-hearing transcript in this

---

[1] We note that Crim.R. 32.1 does not require a court to issue findings of fact and conclusions of law when ruling on a motion to withdraw a guilty plea.  *See State ex rel. Chavis v. Griffin*, 91 Ohio St.3d 50, 50, 741 N.E.2d 130 (2001).  Although the findings of fact and conclusions of law were issued after the notice of appeal was filed, we can still consider them.  *See Langsam v. Tindera*, 64 Ohio App.3d 228, 229, 580 N.E.2d 1157 (8th Dist.1990) (the trial court retained jurisdiction to make findings of fact and conclusions of law mandated by Civ.R. 52 even though the appeal had already been filed); s*ee also State v. Greer*, 9th Dist. Summit No. 15217, 1992 WL 316350, *2 (Oct. 28, 1992) ("A court's findings and conclusions, unlike a motion for a new trial, Civ.R. 59, or a motion to vacate, Civ.R. 60(B), does not disrupt the judgment of the court, but explains it.").

case because it was part of the trial court proceedings, all of which is consistent with *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), and its progeny.

## Ineffective Assistance of Counsel

{¶16} Diol argues that the trial court erred by denying his emergency motion to vacate his guilty pleas without holding an evidentiary hearing. Specifically, Diol contends that the trial court's advisement that he may be deported did not cure the prejudice from the incorrect advice given by his attorney. Diol further argues that his statement during the plea colloquy that he was a United States citizen does not defeat his claim of ineffective assistance of counsel because the record shows that he was extremely confused about his immigration status. Diol contends that his attorney must have known he was not a citizen because he requested the trial court to advise Diol that he may be deported as the result of his pleas.

{¶17} Diol's motion is titled, "Emergency Motion to Vacate Guilty Plea Under *Padilla v. Kentucky* and *Lee v. United States*," and does not cite any rule of criminal procedure under which he is seeking relief. Nevertheless, like the trial court, we will treat his motion to vacate as a motion to withdraw his guilty pleas pursuant to Crim.R. 32.1. *See State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12 ("Courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged."); *see also State v. Valdez*, 1st Dist. Hamilton No. C-160437, 2017-Ohio-4260, ¶ 4 (citing *Schlee* and recasting Valdez's motion as a motion to withdraw his guilty plea pursuant to Crim.R. 32.1).

{¶18} Crim.R. 32.1 authorizes the postconviction withdrawal of a guilty plea only "to correct manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d

1324 (1977), paragraph one of the syllabus. The defendant bears the burden of proving "manifest injustice." *Id.* The determination of whether the defendant has sustained that burden is committed to the sound discretion of the trial court and will not be disturbed on appeal unless the court abused its discretion. *Id.* at paragraph two of the syllabus; *see State v. Kostyuchenko*, 2014-Ohio-324, 8 N.E.3d 353, ¶ 4 (1st Dist.).

{¶19} It is well-established that the negotiation and entry of a guilty plea is a "critical stage" of the criminal proceedings and a defendant is entitled to effective assistance of counsel during this critical time. *See, e.g., Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017); *Missouri v. Frye*, 566 U.S. 134, 140, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). It is further well-established that deportation is a "particularly severe penalty" which may be of greater concern to a non-United States citizen facing criminal charges than "any potential jail sentence." *Session v. Dimaya*, ___U.S. ___, 138 S.Ct. 1204, 1213, 200 L.Ed.2d 549 (2018), citing *Jae Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958, 1968, 198 L.Ed.2d 476 (2017); *see Padilla* at 366.

{¶20} The due-process protections afforded by Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution require that a guilty or no-contest plea "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). A defendant who seeks to withdraw his plea on the ground that the plea was the unintelligent product of his

counsel's ineffectiveness must demonstrate that counsel's representation was constitutionally deficient, *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that "there is a reasonable probability that, but for [that deficiency, the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *see also Kostyuchenko* at ¶ 5.

{¶21} In *Padilla*, the United States Supreme Court held that defense counsel's representation is constitutionally deficient under *Strickland* when it can be easily determined from reading the removal statute that deportation is presumptively mandatory for the offense to which his client pleaded guilty and counsel provided incorrect advice in this regard. *Padilla* at 368-369. The Court said,

> [w]hen the law is not succinct and straightforward * * *, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear * * * the duty to give correct advice is equally clear.

*Id.* at 369. The Court did not determine whether Padilla was prejudiced, but rather left it to the lower courts to decide whether Padilla's "decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372, citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 and 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

{¶22} *Lee*, ___ U.S. ___, 137 S.Ct. 1958, 198 L.Ed.2d 476, dealt with the prejudice analysis after a court determines that defense counsel has rendered deficient performance under *Padilla*. At an evidentiary hearing on Lee's motion to

vacate his conviction, both Lee and his counsel testified that "deportation was the determinative issue in Lee's decision whether to accept the plea." *Lee* at 1963. Lee's attorney acknowledged that if he had known that Lee was facing mandatory deportation, he would have advised him to go to trial. *Id.*

{¶23} In *Lee*, the government argued that it would have been irrational for Lee to have rejected the plea offer and proceed to trial because he had no viable defense. *Id.* at 1966 and 1968. The government asserted that going to trial would only result in a longer sentence before the inevitable consequence of deportation. *Id.* at 1968. The United States Supreme Court disagreed, and held that "[n]ot everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so." *Id.* at 1969. The Court stated that because deportation is always a particularly severe penalty, preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. *Id.* at 1968, quoting *Padilla* at 368. Lee claimed that if he had been properly advised that deportation was mandatory, he would have rejected the plea offer "in favor of throwing a 'Hail Mary' at trial." *Lee* at 1967. The Court found that "[i]n the unusual circumstances of this case, we conclude that Lee has adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation." *Id.* at 1967.

{¶24} Diol claims that the law is clear that deportation is mandatory in his case. He points to Section 237(a) of the Immigration and Nationality Act, which states that certain classes of aliens "shall, upon the order of the Attorney General, be removed * * *." 8 U.S.C. 1227(a). The statute states that

[a]ny alien who * * * has been convicted of a violation of * * * any law * * * relating to a controlled substance * * * other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. 1227(a)(2)(B).

{¶25} The state takes issue with Diol's assertion that deportation is mandatory and argues that the Attorney General has the authority to "cancel" Diol's removal pursuant to 8 U.S.C. 1229(b). However, at oral argument, the state admitted it was not sure if deportation was mandatory, or whether Diol even qualified for cancelation of removal.

{¶26} In *Padilla*, the United States Supreme Court held that 8 U.S.C. 1227(a)(2)(B) "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Padilla*, 559 U.S. at 368, 130 S.Ct. 1473, 176 L.Ed.2d 284. The Court found that "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute * * *." *Id*. Thus, we hold that there is no question that deportation is presumptively mandatory in Diol's case.

{¶27} It is also clear from the record that Diol's attorney gave him incorrect advice when he advised him during the plea hearing, "I don't believe this would lead to automatic deportation. I believe at worst it possibly could make it discretionary."

{¶28} The state contends that because Diol represented to the trial court during the plea colloquy that he was a United States citizen, he cannot show that his attorney had any duty to advise him of the immigration consequences of his guilty plea. However, the record is clear that his attorney had some doubt if Diol was a

United States citizen, because he asked the trial court to give him the statutory warning required by R.C. 2943.031, which requires courts to advise defendants on the possibility of deportation, exclusion, or denial of naturalization prior to accepting pleas. The record is also clear that Diol was confused about whether he was a United States citizen. Accordingly, we find that Diol's attorney had a duty to determine whether he was or was not a United States citizen, and if he was not, advise him of the immigration consequences of his guilty pleas.

{¶29} The state contends that even if Diol's attorney had a duty to advise him of the immigration consequences of his guilty pleas, the trial court's advisement pursuant to R.C. 2943.031 cured any possible prejudice that may have resulted from trial counsel's deficiency. R.C. 2943.031(A) requires a trial court, prior to accepting a guilty plea from a noncitizen defendant, to provide the following advisement:

> If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

{¶30} Because the statutory advisement states only that the defendant *may* be deported, this advisement does not cure any deficient performance by counsel, as recently confirmed by the Ohi0 Supreme Court. *See State v. Romero*, Slip Opinion No. 2019-Ohio-1839, ¶ 20 ("The advisement in R.C. 2943.031(A) warns defendants that 'pleading guilty *may* have the consequence[] of deportation.' But that generalized warning does not replace counsel's duty to advise his client of the consequences of his guilty plea, as *Padilla* instructs." (Emphasis added.)).

{¶31}  The state argues that because the trial court went beyond the statutory advisement and asked Diol if he wished to plead guilty "even if it meant automatic removal from the United States and you're never able to return," the court effectively warned Diol that deportation was mandatory in this case.  But, the issue we must determine is whether the trial court's admonishment in this case corrected the deficient performance of counsel.  *See United States v. Akinsade*, 686 F.3d 248, 255 (2012).  In *Akinsade*, the United States Court of Appeals for the Fourth Circuit held that "in order for a [trial court's] admonishment to be curative, it should address the particular issue underlying the affirmative misadvice."  *Id.*

{¶32}  In Diol's case, the trial court did not state unequivocally that Diol would be deported.  Asking Diol if he still wished to plead guilty "*even if*" it meant automatic deportation did not correct the misadvice given by Diol's counsel that deportation was discretionary.  The trial court's admonishment "did not provide the degree of accuracy concerning immigration consequences that *Padilla* demands when, as here, federal immigration law plainly mandates deportation."  *Kostyuchenko*, 2014-Ohio-324, 8 N.E.3d 353, at ¶ 15, citing *Padilla,* 559 U.S. at 364, 130 S.Ct. 1473, 176 L.Ed.2d 284.

## Evidentiary Hearing

{¶33}  The state contends that Diol is not entitled to an evidentiary hearing because he did not make a prima facie showing of merit.

{¶34}  The state claims that although Diol stated in his affidavit that he was a citizen of Mauritania, he failed to state that he is not a United States citizen.  The state also claims that because Diol did not include an affidavit from trial counsel,

there are many unanswered questions regarding counsel's knowledge of Diol's immigration status, and discussions Diol and his counsel may have had regarding the immigration consequences of his guilty pleas.

{¶35} A trial court is not automatically required to hold an evidentiary hearing regarding a defendant's motion to withdraw a guilty plea, and a trial court's decision not to hold an evidentiary hearing will be reversed only upon a finding of an abuse of discretion. *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 6. An abuse of discretion requires more than an error of law or judgment, but that the court acted unreasonably, arbitrarily, or unconscionably. *Id.* But, a hearing is required "if the facts as alleged by the defendant and accepted as true would require the court to permit the guilty plea to be withdrawn." *Id.*

{¶36} It is indisputable that deportation is presumptively mandatory in this case if Diol is not a United States citizen. Although the record indicates that both Diol and his defense counsel were confused as to the status of Diol's citizenship during the plea hearing, Diol's affidavit, which was attached to his motion to withdraw his pleas, clearly states that he is a citizen of Mauritania. At oral argument, the state contended that because Diol did not state in his affidavit that he was *not* a United States citizen, he might be a dual citizen of both the United States *and* Mauritania. While Diol's affidavit could be clearer, it can certainly be read to allege that he is not a United States citizen.

{¶37} In his affidavit, Diol asserted that his defense counsel failed to inform him of the immigration consequences for pleading guilty on the drug charges, and that if he had known that deportation was a mandatory consequence of such pleas, he would not have pleaded guilty. The state claims that this affidavit is "self-

serving," and, standing alone, is insufficient evidence to trigger an evidentiary hearing.

{¶38} But, Diol's affidavit does not stand alone. The transcript of the plea hearing not only indicates that defense counsel was uncertain of Diol's immigration status and the immigration consequences flowing from the guilty pleas, but he also misadvised Diol about the immigration consequences for guilty pleas to the drug-trafficking and possession charges.

{¶39} Defense counsel attempted to cure the deficiency with the statutory warning by the court. Nevertheless, as we have held, the trial court's statutory warning did not correct the misadvice given by Diol's counsel that deportation was discretionary.

{¶40} In sum, Diol has alleged facts, which if accepted as true, would require the court to permit the guilty pleas to be withdrawn. The trial court thus abused its discretion in failing to hold an evidentiary hearing in this case.

{¶41} The fact that trial counsel misadvised Diol about the deportation consequences of convictions to marijuana trafficking and possession is clear from the record, and satisfies the first prong of *Strickland*. However, the evidentiary hearing can clarify whether Diol is a United States citizen and whether but for his attorney's misadvice, he would have pleaded not guilty and insisted on going to trial.

{¶42} The recent Ohio Supreme Court case, *Romero*, Slip Opinion No. 2019-Ohio-1839, holds that "In assessing whether it would be rational for a defendant to go to trial instead of pleading guilty, the court should consider the totality of the circumstances." The *Romero* case lays out certain factors that trial courts should consider in evaluating prejudice such as the consequences of going to trial, the

importance that the defendant placed on avoiding deportation, the defendant's connections to the United States, and the judicial advisement of immigration consequences. *Id.* at ¶ 30-32. As the court stated in *Romero*, "From these and other factors in a given case, the trial court will determine whether the totality of circumstances supports a finding that counsel's performance was deficient, and if so, whether the deficient performance was prejudicial to the defendant." *Id.* at ¶ 34. Given that neither the trial court nor counsel had the benefit of *Romero* at the time the motion was pending, these considerations are also worthy of exploration at the evidentiary hearing.

### Conclusion

{¶43} For the foregoing reasons, Diol's assignments of error are sustained, and the judgment of the trial court denying his motion to withdraw his pleas is reversed. The cause is remanded to the trial court to conduct an evidentiary hearing on Diol's motion to withdraw his guilty pleas consistent with this opinion.

Judgment reversed and cause remanded.

BERGERON, P.J., concurs.
WINKLER, J., dissents.

WINKLER, J., dissenting.

{¶44} I respectfully dissent. I would overrule the assignments of error and affirm the common pleas court's decision overruling Diol's Crim.R. 32.1 motion to withdraw his guilty pleas.

{¶45} On that motion, Diol bore the burden of demonstrating that counsel had been constitutionally deficient in advising him concerning the removal consequences of his convictions upon his pleas, and that this deficiency in counsel's

performance had prejudiced him, that is, that "a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The prejudice prong of that analysis thus required an inquiry into the circumstances surrounding Diol's decision to plead. Those circumstances necessarily included matters that transpired at the hearing where his pleas had been entered and accepted. *See State v. Valdez*, 1st Dist. Hamilton No. C-160437, 2017-Ohio-4260, ¶ 18.

{¶46} A photocopy of the plea-hearing transcript was attached to the motion. That attachment, lacking proper certification, was not self-authenticating for purposes of the common pleas court's decision on the motion. *See* Evid.R. 902(4). Nor was the attachment, as App.R. 9(B) requires for this court's decision in the appeal, bound, certified as correct with an original signature of the transcriber, and filed with the common pleas court clerk under App.R. 10(A).

{¶47} On March 26, 2018, the common pleas court entered judgment overruling the motion. From that entry, Diol filed this appeal, and on April 27, 2018, he caused to be filed with this court an App.R. 9(B)-compliant transcript of the plea hearing.

{¶48} On June 11, 2018, the common pleas court issued a second "Entry Denying Motion to Vacate Guilty Plea * * *," and this time the court, although not required to do so, included findings of fact and conclusions of law. But the March 2018 entry overruling the motion was, without findings of fact and conclusions of law, a final appealable order. And the March 2018 entry, along with this appeal from that entry, divested the common pleas court of jurisdiction to decide the motion and vested jurisdiction in this court to review the common pleas court's decision. Thus, the June

17

2018 entry, issued by the common pleas court after it had lost jurisdiction over the motion, constituted a legal nullity. *See, e.g., Farris v. State*, 1 Ohio St. 188, 189 (1853) (applying the fundamental principle that a judgment of a court acting without jurisdiction is a "nullity"); *Lambda Research v. Jacobs*, 170 Ohio App.3d 750, 2007-Ohio-309, 869 N.E.2d 39, 45 (1st Dist. 2007) (holding that an entry concerning issues directly related to the subject of an appeal, entered after that appeal had divested the trial court of jurisdiction, constituted a "legal nullity"); *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 09CA009573, 2010-Ohio-1352, ¶ 9 (holding that supplemental findings of fact and conclusions of law filed after the notice of appeal from a final appealable order constituted a nullity, because the notice of appeal deprived the trial court of jurisdiction to act on the motion for findings).

{¶49} The App.R. 9(B)-compliant plea-hearing transcript filed in this appeal was not before the common pleas court during the proceedings resulting in the March 2018 entry overruling Diol's Crim.R. 32.1 motion. Nevertheless, the majority asserts that this court, in deciding this appeal from the March 2018 entry, may "consider" that transcript, because the June 2018 entry was demonstrably the product of the common pleas court's "review[] [of] and reli[ance] on [that] transcript."

{¶50} But the Ohio Supreme Court has declared, as "a bedrock principle of appellate practice in Ohio," that an appeals court is limited to the record of the proceedings resulting in the judgment appealed. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13; *see Valdez,* 1st Dist. Hamilton No. C-160437, 2017-Ohio-4260, at ¶ 20. And upon that principle, the court has long held that "[a] reviewing court cannot add matter to the record before it, which [matter] was not a part of the trial court's proceedings, and then decide the appeal on the

basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. *See, e.g., Valdez* at ¶ 20 (following *Ishmail* in declining to consider a plea-hearing transcript filed with the court of appeals after appellant had appealed the judgment overruling his motion to vacate his plea); *State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030 (1st Dist.2010) (following *Ishmail* in declining to consider a plea-hearing transcript attached to appellant's brief that was not before the municipal court in deciding appellant's Crim.R. 32.1 motion); *Metzcar v. Metzcar*, 1st Dist. Hamilton No. C-850801, 1986 WL 12741, *1 (Nov. 12, 1986) (following *Ishmail* in declining to consider a transcript of proceedings before a domestic-relations magistrate that had been filed with the court of appeals, but had not yet been prepared when the domestic-relations court overruled objections and adopted the magistrate's report).

{¶51} The App.R. 9(B)-compliant plea-hearing transcript filed in this appeal was not before the common pleas court during the proceedings resulting in the March 2018 entry from which the appeal was taken. Under the rule of *Ishmail*, along with our long line of decisions following *Ishmail*, this court may not consider that transcript in deciding this appeal. In the absence of that transcript, the common pleas court cannot be said to have abused its discretion in overruling Diol's Crim.R. 32.1 motion to withdraw his guilty pleas. Accordingly, I would overrule the assignments of error and affirm the court's decision.

Please note:

The court has recorded its own entry on the date of the release of this opinion.