[Cite as *State v. Kurdi*, 2022-Ohio-4459.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-L-125 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| MOHAMMAD Y. KURDI, | Trial Court No. 2020 CR 000920 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: December 12, 2022
Judgment: Reversed and remanded

*Charles E. Coulson,* Lake County Prosecutor*,* and *Kristi L. Winner* and *Teri R. Daniel,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Maya Lugasy,* Robert Brown LLC, 1468 West 9th Street, Suite 705, Cleveland, OH 44113; and *Hannah Christ,* Kramer Law Clinic, 10900 Euclid Avenue, Cleveland, OH 44106 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}   Appellant, Mohammad Y. Kurdi, appeals the judgment of the Lake County Court of Common Pleas, denying his post-sentence motion to withdraw his guilty plea. At issue is whether appellant, a lawful, non-citizen resident of the United States, was entitled to an evidentiary hearing on his post-sentence motion to withdraw his guilty plea where the record demonstrates he has a colorable claim for ineffective assistance of counsel.  We reverse the judgment of the trial court and remand the matter for further proceedings.

{¶2} Appellant, a native citizen of Jordan, has been a lawful resident of the United States since 2013. In September 2020, appellant was charged with one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), a felony of the third degree. In a separate case, appellant was charged with one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the fifth degree; one count of carrying concealed weapons, in violation of R.C. 2923.12(A)(1), a misdemeanor of the first degree; and possession of dangerous drugs, in violation of R.C. 4729.51(E)(1)(c), a misdemeanor of the first degree. Upon advice of counsel, appellant entered pleas of guilty to the aggravated trafficking count and possession of cocaine count and, although the matters were unrelated, they were consolidated for purposes of sentencing. Before entering the pleas of guilty, appellant acknowledges he was informed by counsel that pleading guilty to aggravated trafficking in drugs may lead to his deportation. And, during the plea hearing, appellant concedes the trial court also advised appellant that pleading guilty may lead to his deportation or removal from the United States, pursuant to the statutory requirements of R.C. 2943.031.

{¶3} Appellant was ultimately sentenced to 137 days in the Lake County Jail on the possession of cocaine count and 29 days in jail for aggravated trafficking in drugs with two years of community control in each case. Appellant subsequently filed a post-sentence motion to withdraw his guilty plea, which was denied without a hearing. The trial court determined that appellant did not receive ineffective assistance of counsel. This appeal follows. Appellant's assignments of error provide:

{¶4} "[1.] The trial court abused its discretion when it denied appellant's motion to withdraw his guilty pleas and vacate his conviction where appellant showed that he

2

was prejudiced by the failure of his attorney to adequately inform him of the immigration consequences of his plea.

{¶5} "[2.] The trial court abused its discretion when it denied appellant's motion to withdraw his guilty plea without a full evidentiary hearing."

{¶6} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1; *State v. Reyes*, 11th Dist. Portage No. 2013-P-0049, 2014-Ohio-1679, ¶12. A manifest injustice has been described as "an obvious, unjust act or fundamental flaw in the proceedings." (Citations omitted.) *State v. Bell*, 11th Dist. Portage No. 2018-P-0016, 2018-Ohio-4373, ¶10. A ruling on a post-sentence motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Selvaggio*, 11th Dist. Lake No. 2017-L-128, 2018-Ohio-3532, ¶12.

{¶7} "'While a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of a guilty plea if the request is made before sentencing, the same is not true if the request is made after the trial court has already sentenced the defendant. [*State v. Xie*, 62 Ohio St.3d 521 (1992),] paragraph one of the syllabus. * * * '[A] trial court need not hold an evidentiary hearing on a post-sentence motion to withdraw a guilty plea if the record indicates the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice.' (Citation omitted.) *State v. Caskey*, 11th Dist. Lake No. 2010-L-014, 2010-Ohio-4697, ¶11." *State v. Peete*, 11th Dist. Trumbull No. 2018-T-0094, 2019-Ohio-25113, ¶17.

Case No. 2021-L-125

{¶8} A plea negotiation is a critical phase of a criminal prosecution for purposes of the Sixth Amendment right to effective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct.52, 88 L.Ed.2d 203 (1985). A claim of ineffective assistance of counsel involves a two-prong analysis. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). First, a court must determine whether counsel's performance fell below an objective standard of reasonable representation. The second prong requires the appellant to establish prejudice. *Id.*

{¶9} Appellant contends that he received ineffective assistance of counsel because his trial counsel failed to inform him that, by entering his plea, he would be mandatorily deported. He asserts that counsel's statement that, by entering the plea, he ran the risk of deportation was insufficient because the advice led him to believe he could challenge the deportation.

{¶10} In his motion to withdraw, appellant supported his contentions with an affidavit in which he averred that both the trial court and his attorney advised him, prior to entering his pleas, that he "may" be deported. These averments are uncontested. Shortly after his pleas were accepted, he was taken into immigration custody and was told his charges required automatic deportation. Based upon his conversations with his attorney and the trial judge, appellant averred he thought he could challenge deportation if authorities initiated proceedings. Had he known he could not so challenge deportation, he asserted he would have never entered his plea.

{¶11} Appellant's trial counsel also submitted an affidavit in which she averred that she was informed by appellant's counsel in a separate case that "there did not appear to be an immigration hold" on appellant while he was incarcerated for the underlying

4

charges.  She additionally asserted that, while she was aware of immigration concerns, she did not advise appellant that entering the plea would result in automatic deportation; after speaking with appellant's family and their immigration attorney, however, she was advised appellant would be deported as a result of his plea.

{¶12}  In support of his arguments on appeal, appellant cites the United States Supreme Court's opinion in *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  In *Padilla*, the defendant was a lawful, permanent resident of the United States for more than 40 years. *Id.* At 359. He faced deportation as a result of pleading guilty to the transportation of a large amount of marijuana. *Id*. The defendant asserted his counsel was ineffective because she not only failed to advise him of the consequence of deportation but also advised him he need not worry about his immigration status because he had been a resident of the United States for such a lengthy duration. *Id.*  He relied on counsel's erroneous advice when he entered the plea, which made his deportation a relative certainty*.  Id.*

{¶13}  The Supreme Court determined that the defendant's counsel was deficient for failing to "advise her client regarding the risk of deportation." *Id.* at 367.  The Court recognized the problems a defense attorney might encounter in properly advising a client of deportation resulting from a criminal conviction given the complexities of immigration law.  *Id.* at 369.  The Court nevertheless underscored, however, when it is clear a defendant will be deported based upon the charges at issue, counsel has a duty to give correct advice.  *Id.*  Alternatively, where the deportation consequences are unclear or uncertain, an attorney need do no more than advise the noncitizen client that the charges may carry a risk of deportation.  *Id.*  The decision was underscored by the Court's

5

recognition of the unique role that deportation can play in criminal punishment. *Id.* at 373. As the Supreme Court explained, "informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties." *Id.* Given the unique and extreme consequence of deportation, it is incumbent on counsel to warn their clients when a guilty plea would have such an impact. *Id.* "The severity of deportation – 'the equivalent of banishment or exile,' - only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (Internal citation omitted) Id. at 373-374.

{¶14} In its judgment entry denying appellant's post-sentence motion to withdraw, the trial court focused upon trial counsel's and the court's advisement regarding the a risk of removal. The court concluded the advisement was not "incorrect or false, nor did counsel fail to give him any advice." The court therefore concluded counsel's performance was not deficient. Further, even assuming counsel's performance was deficient, the court determined that appellant did not establish that deportation was a determinative issue in his decision to enter the pleas. Additionally, the court found "the evidence presented by the defendant [did not] indicate that he has strong connections and significant familial ties to the United States." Thus, the court concluded appellant did not establish prejudice.

{¶15} With respect to the trial court's analysis of counsel's performance, *Padilla* did not simply state that as long as some advisement is given of the possibility of deportation, then counsel's performance is constitutionally sufficient. Rather, the Court

6

specifically stated that when immigration consequences can be "easily determined from reading the removal statute," and "the deportation consequence is truly clear * * * the duty to give *correct advice is equally clear*." (Emphasis added.) *Id.* 559 U.S. at 369. The trial court did not conduct an inquiry into whether the removal statute(s) at issue clearly revealed the mandatory nature of deportation and thus, its reliance on the advice that was actually given was inadequate.

{¶16} 8 U.S.C. 1227(a) defines classes of deportable aliens. 8 U.S.C. 1227(a)(2)(A)(iii) provides that "[a]ny alien * * * in and admitted to the United States, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: * * * [a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" includes "illicit trafficking in a controlled substance * * * including a drug trafficking crime * * *." 8 U.S.C. 1101(a)(43)(B). A "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. 802(6). Methamphetamine, the drug which formed the basis of appellant's aggravated trafficking in drugs charge, is a Schedule III drug. *See* 21 U.S.C. 812(c), "Schedule III"(a)(1). Further, cocaine, which was the predicate drug upon which is possession charge was based, is a Schedule II drug. 21 U.S.C. 812(c), "Schedule II"(a)(4). Hence, appellant's conviction for aggravated trafficking in drugs, at the least, is an "aggravated felony" and accordingly, a "deportable" offense.

{¶17} Moreover, Section 1227(a)(2)(B)(i) provides that: "[a]ny alien * * * in and admitted to the United States, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: * * * [a]ny alien

7

who at any time after admission has been convicted of a violation of * * * any law or regulation of a State, the United States, or a foreign country relating to a controlled substance * * * other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." Appellant's convictions, aggravated trafficking in drugs and possession of cocaine, are violations of Ohio law relating to controlled substances. They are therefore "deportable" offenses.

{¶18} Although the term "deportable" suggests that deportation is a potential consequence of a state conviction relating to controlled substances, courts, including *Padilla*, have observed that the term implies that deportation is, under contemporary law, "practically inevitable" *Padilla*, at 363-364; *see also State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶7; *State v. Cardenas*, 2d Dist. Darke No. 2015-CA-16, 2016-Ohio-5537, ¶46; *State v. Romero*, 5th Dist. Stark No. 2016CA00201, 2017-Ohio-2950, ¶24.

{¶19} Furthermore, we recognize that deportation is triggered by "order of the Attorney General." The state points out that this phrase suggests that the conviction makes an individual eligible for deportation, but does not automatically require deportation; that is, according to the state's reading, deportation is only triggered if the Attorney General orders the same. Still, *Padilla*, qualifies this interpretation; to wit, there are "limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. See 8 U.S.C. [Sec.] 1229b. Subject to limited exceptions, this discretionary relief is not available for an offense related to trafficking in a controlled substance." *Padilla*, at 364. And, more significantly, 8 U.S.C. 1228(c) creates a "presumption of deportability," providing: "An

8

alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." To the extent appellant's convictions is an "aggravated felony," the Attorney General has no discretion to cancel appellant's removal.

{¶20} In light of the foregoing, appellant's convictions were clear from the relevant statutes. In this regard, pursuant to *Padilla*, counsel was required to advise appellant that his convictions would trigger a *conclusive* presumption of deportability. Counsel did not do so and therefore her performance was deficient.

{¶21} As pertains to prejudice in this context, the governing United States Supreme Court case is *Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958, 198 L.E.2d 476 (2017). In *Lee*, the defendant was advised by his attorney that he would not be deported as a result of pleading guilty. *Id.* at 1962. Based on this advisement, the defendant pleaded guilty to an aggravated felony and was sentenced to one year and one day in prison. *Id.* at 1963. The attorney's advice was wrong: the defendant was subject to mandatory deportation as a result of his plea. *Id.* The defendant was granted a hearing on his motion to vacate, at which both he and his trial counsel testified that deportation was the determinative issue in his decision to plead guilty. *Id.* The defendant contended that he never would have entered a guilty plea had he known the result would be deportation. *Id.* The attorney acknowledged that although the defense was weak, he would have advised the defendant to go to trial had he known of the mandatory deportation consequences to the plea. *Id.* Nevertheless, the district court denied the motion to vacate. *Id.* at 1964. The Sixth Circuit affirmed, concluding that the defendant could not show that he was prejudiced by his counsel's erroneous advice. *Id.*

9

**{¶22}** On appeal to the Supreme Court, the government defended the decision, in part, by arguing that the defendant could not "convince the court that a decision to reject the plea bargain would have been rational under the circumstances," as stated in *Padilla* at 372. The Court rejected this argument noting that, unlike the Government, it could not say that it would be unreasonable for someone in Lee's position to risk additional prison time in exchange for holding on to some chance of avoiding deportation. *Lee* at 1968-1969. The Supreme Court ultimately reversed the trial court's judgment, concluding that Lee had adequately demonstrated a reasonable probability that he would have rejected the plea had he been aware that it would lead to mandatory deportation; both Lee and his lawyer testified that "deportation was the determinative issue" to Lee; his responses during his plea colloquy confirmed the significance he placed on deportation; and Lee had significant connections to the United States, while he had no ties to South Korea." *Id.* at 1967-1968.

**{¶23}** In reaching this conclusion, the Court held: "When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, at 1969, quoting *Hill* at 59. More fundamentally, the *Hill v. Lockhart* inquiry focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial. *Lee* at 1966. "The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.*, citing *INS v. St. Cyr*, 533 U.S.

Case No. 2021-L-125

289, 322-323, 121 S.Ct. 2271, 150 L.Ed.2d 347. When the inquiry is focused on what the individual defendant would have done, the possibility of even a highly unlikely result may be relevant to the extent it would have affected the defendant's decision. *Lee* at 1967. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Rather, they should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id. See also State v. Bozso*, 162 Ohio St.3d 68, 2020-Ohio-3779, 164 N.E.3d 344 (applying *Lee*).

{¶24} As in *Lee*, regardless of the arguably improbable result of an acquittal had he proceeded to trial, appellant's motion and affidavit demonstrate that the inaccurate advice of counsel (bolstered by the court's inaccurate statements) fundamentally induced his decision to plead guilty insofar as it created the reasonable belief he could challenge what he believed to be a *possible* (not mandatory) deportation. In his attached affidavit, appellant specifically averred the following, in pertinent part:

{¶25} 7. Prior to entering my plea, * * * I was advised by [the trial judge], as well as by my lawyer, that if I entered these pleas I may be subject to deportation.

{¶26} 8. * * *

{¶27} 9. Shortly after my pleas, I was taken into immigration custody. I was made aware that drug trafficking charges amount to automatic deportation from the United States.

{¶28} 10. Based on my conversations with my attorneys, and the advisement of the Judge, I thought that if I entered the plea, I would be able to fight the deportation. That is not the case.

{¶29} 11. I now know that with drug trafficking convictions, mitigation is not taken into account.

11

Case No. 2021-L-125

{¶30} 12. Had I had this knowledge in advance of my plea, I would never have entered this plea.

{¶31} Appellant's trial counsel also submitted a corroborating affidavit, in which she averred the following, in relevant part:

{¶32} 5. Although I was aware of immigration concerns, I advised [appellant] to enter into this plea agreement * * *.

{¶33} 6. I did not advise [appellant] that entering a plea of guilty to either of these charges would definitively result in automatic deportation.

{¶34} 7. * * *

{¶35} 8. If I had known that [appellant] would be automatically deported as a result of this plea agreement, I would have consulted with [counsel] regarding possible defenses as well as further plea negotiations.

{¶36} According to the trial court, these affidavits do not establish that deportation was "the determinative issue" in appellant's decision to plead guilty. What else does one have to do to get a hearing in this district?

{¶37} There is no dispute that trial counsel advised appellant that his plea of guilty "may" lead to his deportation. It is also uncontested that the trial court advised appellant that pleading guilty "may" lead to his deportation. These points form the basis of appellant's motion. The rules of evidence provide that statements can be adopted by silence. Under such circumstances, such adoptions do not implicate hearsay prohibitions and adoption by silence may occur where the statement was understood, the party was free to disavow it, and does not deny its truth, even though a reasonable person would have done so. *See, e.g., State v. Hardison*, 9th Dist. Summit No. 23050, 2007-Ohio-366, ¶9. Hearsay is not an issue here. Still, the policy behind the exception applies with equal

12

Case No. 2021-L-125

force in this case. Where neither defense counsel, the trial court, nor the prosecutor denied appellant's averments, their silence, in the face of the motion, can be viewed as an adoption.

{¶38} In ruling upon appellant's motion to withdraw, the trial court does not refute the averment that it merely advised of the possibility of deportation, and improperly relies on *Padilla* for the proposition that trial counsel need only advise a defendant of "the deportation risk." As *Lee* clarifies, if immigration consequences are easily determined from the relevant removal statute, an attorney has a duty to give correct advice. In light of these points, appellant was entitled to an evidentiary hearing.

{¶39} The dissenting opinion maintains that appellant's pre-sentence awareness that an ICE hold had been placed upon him somehow undermines his post-sentence motion. It does not. Appellant was aware that he may be deported and that he would face further immigration proceedings. The ICE hold was therefore not surprising and even expected. The ICE hold did not convey that deportation was mandatory and its existence is therefore of no consequence.

{¶40} The dissenting opinion mimics the trial court's careless description of appellant's affidavit as "self-serving," as though it is not credible as a matter of law. Appellant's credibility, or lack thereof, may be a valid determinative factor in ruling on the motion *after* an evidentiary hearing. "But [appellant] does not deserve to have his claims dismissed out of hand with the usual bromides about relying on a 'self-serving affidavit.'" *State v. Dunlap*, 161 Ohio St.3d 1416, 2021-Ohio-181, 161 N.E.3d 704, ¶ 5 (Donnelly, J., dissenting).

13

Case No. 2021-L-125

{**¶41**} "A defendant in this scenario is rarely ever going to have anything to back up a plea-withdrawal motion other than his own claims about what happened. And only an evidentiary hearing will establish whether those claims are true." *Id.* "To say that a defendant's claims in support of withdrawing his plea do not warrant an evidentiary hearing because they are not already backed up by solid, admissible evidence puts the defendant in an impossible position and ensures that an evidentiary hearing is never warranted no matter how specific and convincing a defendant's claims might be." *Id.; accord Bozso*, 2020-Ohio-3779, at ¶ 44 (Donnelly, J., dissenting) ("a defendant cannot be expected to make a record of the fact that he has been misinformed about a crucial issue at the time he is operating under that misinformation"). Additionally, appellant's "self-serving" affidavit does not stand alone, but alongside the supporting affidavit of trial counsel and the corroborating fact that appellant is willing to risk a much more severe penalty, including a prison sentence, by withdrawing his plea and going to trial.

{**¶42**} Moreover, the fact that an affidavit is self-serving does not render it improper. All affidavits submitted in litigation are "self-serving" to the extent they serve the interests of the party submitting the instrument (otherwise, why would they be submitted at all?). Accordingly, the facile and dismissive designation of an affidavit as "self-serving" needs qualification, if not extermination from the critical lexicon. While parties may not thwart the purposes of procedural rules by submitting affidavits that create sham issues or contradict their own depositions, *see Belknap v. Vigorito*, 11th Dist. Trumbull No. 2003-T-0147, 2004-Ohio-7232, ¶26-27, sworn affidavits that inform a court's analysis and which are neither conclusory nor contradictory of some prior point *must* be given due weight.

14

Case No. 2021-L-125

{¶43} Appellant's affidavit, which was additionally supported by trial counsel's affidavit, succinctly averred that: (1) the judge and his lawyer advised him he *may* be subject to deportation (facts not disputed); (2) he believed he could fight the possibility of deportation (a reasonable inference to draw from the undisputed facts); but (3) learned, after pleading guilty, his plea subjected him to automatic deportation. These averrments should not be dismissed with a "wave of the hand" simply because they are "self-serving." The motion and affidavits, taken together, were more than sufficient to justify a hearing on appellant's motion.

{¶44} The dissenting opinion further justifies affirming the trial court's conclusion that appellant suffered no prejudice—reached without the benefit of an evidentiary hearing—due to appellant's failure to provide a transcript of the plea hearing for appellate review. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶45} Here, however, a transcript of the plea hearing is not necessary for resolution of this appeal. The only reference to the plea colloquy in appellant's motion pertains to the deportation advisement given by the trial judge, which is not disputed by the trial court in its entry or by the parties on appeal. If not true, appellee could have supplemented the record with the plea transcript. *See* App.R. 9(B)(5). And, "'[i]n fairness to the parties, a Court of Appeals which contemplates a decision upon an issue not briefed should * * * give the parties notice of its intention and an opportunity to brief the issue.'"

15

Case No. 2021-L-125

*See Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St.3d 198, 202 (1986), quoting *C. Miller Chevrolet v. Willoughby Hills*, 38 Ohio St.2d 298, 301 (1974). The dissent has not recommended this act of fairness.

{¶46} Accordingly, the dissent's view that *appellant* was required to provide a transcript of the plea hearing to inform this court's analysis on the error he assigns makes little sense. Why would appellant be required to provide evidence of a fact that is not at issue to demonstrate that the fact did not occur? The dissent asserts the transcript is "important, if not necessary in a matter such as this * * *." The facts germane to the resolution of the appeal are not in dispute and thus requiring a transcript for appellant to, in effect, prove a negative is misplaced.

{¶47} "An appellant has the duty to ensure that the record or whatever parts thereof are necessary for the determination of the appeal are filed with the appellate court." (Citations omitted.) *Aurora v. Belinger*, 180 Ohio App.3d 178, 2008-Ohio-6772, ¶30 (11th Dist.) An appellant is not obligated, therefore, to provide transcriptions of proceedings which are extraneous to the determination of the appeal. The dissent's statement that appellant's failure to provide a record of the plea proceedings was somehow error is a misapplication of appellate procedural law.

{¶48} With this in mind, we recognize that there could be times when the plea transcript is necessary on appeal such as where a trial court denies an evidentiary hearing because the motion is belied by that transcript, but that is not the case here. *See State v. Madeline*, 11th Dist. Trumbull No 2000-T-0156, 2002 WL 445036, *6 (Mar. 22, 2022) (an evidentiary hearing is not required if the record, on its face, conclusively and irrefutably contradicts the allegations in the motion). Here, however, the trial court did

Case No. 2021-L-125

not find that its deportation advisement at the plea was other than appellant avers and it did not deny the motion on this basis.

{¶49} Nevertheless, the dissent asserts that, based on whatever may have occurred at the plea hearing, the trial court "*could have* reasonably concluded that it would not have been rational for appellant to reject the plea agreement." (Emphasis added.) This is nothing more than unnecessary speculation and runs contrary to the basic tenets of appellate review. Moreover, it is not the relevant inquiry under *Lee.* The inquiry, under *Lee*, focuses on *a defendant's* thought process, which may have nothing to do with the likelihood of obtaining a favorable result after trial. *Lee,* at 1966. Indeed, as the Court underscored, even the smallest chance of winning at trial may look attractive in the face of mandatory deportation. *Id.* In sum, an evaluation of a defendant's decision-making strategy in an automatic deportation case is not based upon what an otherwise reasonable defendant (or judge) might do, but what that defendant would do, in light of the dire consequences of deportation. *See id.* at 1966-1967.

{¶50} The dissent additionally asserts *Lee* is inapplicable. We disagree. While there are factual differences, they are not substantive, legal differences. When a person is misinformed as to deportation risk, and that misinformation induces his plea, he is entitled to withdraw his plea. In *Lee* he was advised he would not be deported, when it was a certainty and, in this matter, he was informed he may be deported, when deportation was a certainty. This distinction is of no substance. To tell somebody he will not be deported when he will be deported or to tell somebody they may be deported when they will is still misinformation. And when the misinformation induces a plea that

17

otherwise would not have been entered, the defendant is still entitled to a hearing on a properly filed motion.

{¶51} The concept is akin to informed consent in a medical context. Few would say that if a doctor advised you before a surgery that you "may" die, but death were, in fact, a certainty, that the omisadvisement would have no bearing.

{¶52} The record before this court for review does not contradict appellant's plea-withdrawal averments. Further, pursuant to the law set forth by the United States Supreme Court in *Lee*, which the trial court neither acknowledged nor applied, appellant's allegations accepted as true would require the court to permit withdrawal of the plea. Thus, the trial court was required to hold an evidentiary hearing before ruling on the motion. More evidence must be adduced to draw an informed conclusion on the issue of prejudice resulting from trial counsel's deficient advice.

{¶53} This is not an aberrant conclusion for an Ohio appellate court to reach. For example, the First Appellate District has addressed a motion to withdraw a guilty plea under substantially similar circumstances. *See State v. Diol*, 1st Dist. Hamilton No. C-180249, 2019-Ohio-2197. In support of his motion, the defendant in *Diol* submitted his own affidavit and a transcript of the plea hearing, which included defense counsel's erroneous advice as to the deportation consequences of a guilty plea. *Id.* at ¶ 38. The First District held that the trial court abused its discretion in failing to hold an evidentiary hearing because the defendant "[had] alleged facts, which if accepted as true, would require the court to permit the guilty pleas to be withdrawn." *Id.* at ¶ 40. *See also State v. Ahmed*, 8th Dist. Cuyahoga No. 108548, 2020-Ohio-4057, ¶ 20; *State v. Perry*, 5th Dist. Muskingum No. CT2018-0045, 2019-Ohio-2776, ¶ 45-46; *State v. Arrunategui*, 9th

18

Case No. 2021-L-125

Dist. Summit No. 26547, 2013-Ohio-1525, ¶ 14-15; and *State v. Yahya*, 10th Dist. Franklin No. 10AP-1190, 2011-Ohio-6090, ¶ 23 (each court holding that the trial court's failure to conduct a hearing on a motion to withdraw a guilty plea based on insufficient or inaccurate deportation advisements was an abuse of discretion).

{¶54} Trial counsel provided the wrong advice. Counsel had a duty, because mandatory deportation was clear from the federal statutory scheme, to provide accurate advice. The wrong advice induced appellant to forfeit his constitutional right to a jury trial. That appellant was so induced is clear from the record. Appellant's allegations and supporting materials demonstrate, at the least, the trial court was required to hold an evidentiary hearing.

{¶55} Appellant's second assignment of error has merit.

{¶56} Appellant's first assignment of error essentially requests this court to enter judgment in his favor on the pleadings. Our adjudication of his second assignment of error requires the trial court to hold a hearing on appellant's motion, take testimony, and evaluate the credibility of the testimony advanced at the hearing. Because, as we have held, the facts are sufficiently plead that, if believed, withdrawal would be necessary to correct a manifest injustice. Under these circumstances, a hearing is necessary for the trial court to assess the evidence at issue and enter a judgment on the merits. *See State v. Whiteman*, 11th Dist. Portage No. 2001-P-0096, 2003-Ohio-2229, ¶19 (in a post-sentence motion to withdraw a guilty plea, a hearing is required if the facts alleged by a defendant, accepted as true would require a trial court to permit withdrawal.) *See also State v. Baker*, 2018-Ohio-669, ¶13 (2d.Dist.) (a trial court must hold a hearing on a post-

19

sentence motion to withdraw guilty plea if it is necessary to correct a manifest injustice.)

In this respect, appellant's first assignment of error is overruled.

{¶57} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is reversed and remanded for further proceedings.

MATT LYNCH, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶58} I believe the record is sufficient to support a finding that counsel and the trial court gave Appellant the required deportation warning prior to entering his plea. I do not perceive any prejudice and/or manifest injustice such that a hearing was necessary. I would therefore conclude the trial court did not abuse its discretion in denying appellant's post-sentence motion to withdraw his plea of guilty. I accordingly dissent.

{¶59} At his plea hearing, counsel, as well as the trial court advised appellant that he may be deported because of his plea. At sentencing, appellant's counsel, Attorney Bethany Stewart, advised the court, inter alia, that appellant understood ICE had placed a hold on him. Under Crim.R. 32.1, a defendant may file a motion to withdraw a plea of guilty before sentence is imposed. A presentence motion to withdraw a plea of guilty "should be freely and liberally granted." *State v. Xie,* 62 Ohio St.3d 521, 527 (1992). Despite his awareness that he may be deported and his awareness of the ICE hold, appellant did not seek withdrawal of his plea prior to sentencing. Had he done so,

20

Case No. 2021-L-125

the trial court would be obligated to give his request greater deference. Because appellant waited until after he was sentenced, the trial court was not required to be as charitable, especially when the court was aware of the facts of the case and the penalties appellant faced if convicted.

{¶60} Moreover, appellant admits in his affidavit that he did not consult an immigration attorney regarding his deportation status. Further, appellant could have consulted an immigration attorney once he was on notice that ICE had placed a hold on him. Again, he did not do so. Requiring defense counsel or the court to determine, with precision, the effect of a conviction on an alien's deportation status is a significant burden. This is especially so where a defendant could have but did not seek out the advice from an immigration attorney at any point.

{¶61} Here, no transcript of the plea hearing was filed. Appellant could have but did not file the transcript. In effect, appellant failed to provide this court with a record of the plea proceedings. A transcript is important, if not necessary, in a matter such as this because it would permit the reviewing court to consider what the trial court heard in accepting the plea, and perhaps most importantly, the factual bases for the plea.

{¶62} The trial court, in rejecting appellant's post-sentence motion without a hearing, had the benefit of knowing the facts and circumstances of the charges both from the state's representations of what it intended to prove had the matter gone to trial, as well as the pre-sentence investigation report. From these sources of information, the trial court was not only aware of the potential strength of the prosecution's case, but also knew that had appellant gone to trial and been convicted, he faced between six- and 12-months imprisonment on the felony five and up to 36-months imprisonment on the felony three.

21

In pleading guilty, appellant received a significantly lighter sentence; to wit, minimal time in jail and two years of community control.

{¶63} With respect to the prejudice prong of *Strickland*, a party is generally required to establish a reasonable probability that, but for counsel's errors, he would not have entered the plea. In the specific context of a defense counsel's failure to properly advise a defendant of the immigration consequences of a guilty plea, the United States Supreme Court has concluded that a defendant demonstrates prejudice by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, *supra*, at 372; see *also Romero*, *supra*, at ¶32. The court in this matter determined appellant failed to establish that his deportation was determinative of his decision to plea and that he does not have strong familial or financial ties to the United States.

{¶64} The trial court knew that had appellant gone to trial and been convicted, he faced between six- and 12-months imprisonment on the felony five and up to 36 months imprisonment on the felony three. In pleading guilty, appellant received a significantly lighter sentence; to wit, minimal time in jail and two years of community control. Also, the trial court determined appellant did not have significant ties to this country. Appellant averred he does have a child in this country; and, in his brief, appellant represents he is a co-parent of the child. This constitutes at least one familial tie to the country. Still, the trial court, in its discretion, was able to assess whether this single tie was sufficient to create a reasonable issue as to whether a manifest injustice would result from denying appellant's motion.

22

Case No. 2021-L-125

{¶65} Moreover, at the sentencing hearing, appellant was already aware ICE had placed a hold on him. Had deportation been a bona fide concern, he would have moved to withdraw his plea *at that time*. He did not. Instead, appellant waited until after he was sentenced to file a self-serving affidavit to support his allegation that he relied upon counsel's deficient advice. In light of what appellant knew prior to sentencing, he was capable of seeking withdrawal of his plea at an earlier stage and his motion would have been subject to a standard requiring the trial court to "freely and liberally" grant the same. Clearly, this case does not rise to the level of a manifest injustice.

{¶66} The majority cites the United States Supreme Court's decision in *Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958 (2017) as authority for the proposition that, when evaluating whether a defendant in a deportation case suffered prejudice from counsel's deficient performance, a court must look to the specific perspective of the defendant in that case. While this may be the thrust of the holding in *Lee*, it is inapplicable to these facts. The defendant in *Lee* was advised specifically he would *not* be deported. Counsel and the trial court in this matter actually advised appellant that he *may* be deported. Appellant was on some notice that his plea could eventuate in deportation and, as a result, the trial court was entitled to conclude his decision to enter the plea was reasonable. As such, the trial court did not err in finding no prejudice.

{¶67} A post-sentence motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Selvaggio*, 11th Dist. Lake No. 2017-L-128, 2018-Ohio-3532, ¶12. I would hold the trial court could have reasonably concluded that it would not have been rational for appellant to reject the plea agreement. As a result, the trial court did not abuse its discretion in concluding appellant suffered no prejudice from counsel's advice.

**{¶68}** I therefore agree with the trial court's conclusion that appellant, on the instant record, failed to establish ineffective assistance of counsel, let alone a manifest injustice. This conclusion supports the trial court's determination that a hearing on appellant's motion was unwarranted.

**{¶69}** I dissent.